# Coffey, *et al. v.* Cross, *et al.*

*Bill for Injunction and to Cancel Instruments.*

(Decided December 18, 1913. 64 South. 95.)

1. *Judgment; Construction.*—A judgment or decree, if obscure as entered, may be upheld if its intention is made clear by reference to the pleadings and other proceedings.

2. *Divorce; Decree; Construction.*—The situation examined and stated, and the decree, held in view of such situation to vest in the wife the fee simple title to the land upon condition that, if she died or married before the death of her infant son, such son could enjoy a life estate in the land with remainder to the wife, if living.

3. *Same; Disposition of Property.*—Upon awarding a divorce to the wife it was competent for the court to vest the fee simple title to a part of the land of the husband in the wife as permanent alimony, and to provide that if the wife died or married before the death of her infant son, such son should have a life estate in the land, and it should revert on his death to the mother.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Charles Macklin Cross and others against I. L. Coffey and others. From a decree for complainants, defendants appeal. Reversed and rendered.

The suit was to enjoin said Coffey from assigning or otherwise disposing of a certain note, and that the deed made to complainant and John Benson Cross be canceled, and the note held by Coffey be surrendered and canceled, and that the bond and mortgage executed to one Washington be rescinded and canceled, and for general relief.

W. H. Norwood, and John F. Proctor, for appellant. If there was any error in the decree of divorce and alimony, it could only be remedied by an appeal taken within the time allowed.—*Rainey v. Ridgeway,* 151 Ala. 532; *Robertson v. King,* 120 Ala. 459. A construction adopted or acquiesced in by the parties to a judgment or decree will not be changed without strong reason.—23 Cyc. 1101. The same is true in regard to construction of contract.—Cyc 588. Clark Cross, the father of complainant, was in his lifetime barred of all legal remedies that he may have had to correct or reverse said decree, and hence, his son, the complainant is likewise barred.—*Montgomery L. & P. Co. v. Lahey,* 121 Ala. 131; 12 A. & E. Enc. of Law, 533; 13 Cyc. 172; 23 Cyc. 877. The decree cannot be attacked in any collateral action or proceedings.—*Alexander v. Nelson,* 42 Ala. 462; *Friedman v. Shamblin,* 117 Ala. 454; *Logan v. Central Co.,* 139 Ala. 548. The effect of the decree was to vest in Mary Cross an estate for life with vested remainder in fee simple to her son Charlie Cross on her death or marriage.—*Sarly v. Owen,* 68 Ala. 161; 17 A. & E. Enc. of Law, 823; 23 Cyc. 883-909. The bill should have been dismissed on final submission.—*Howle v. Birmingham Co.,* 95 Ala. 391; *Fields v. Clayton,* 117 Ala. 538.

Bouldin & Wimberly, for appellee. If there be fraud or failure of title and the vendor is insolvent, equity

will interpose and grant such relief as it can whether the purchaser has a deed and is in possession or not. —*Parker v. Parker,* 93 Ala. 80. The covenants in the deed were full covenants of seizen and warranty of title, and were broken when made if the title was not perfect.—*Moore v. Johnson,* 87 Ala. 220; *Copeland v. McAdory,* 100 Ala. 553; *Sayre v. Sheffield L. Co.,* 106 Ala. 440; *Fidelity & D. Co. v. Walker,* 158 Ala. 129. It is clear under the decree that the wife took only a life estate during her life or widowhood, and that the estate of the son is not to take effect in possession until after the death or marriage of his mother, and in case he does not survive the death or marriage of his mother, he has no estate. It is equally clear that after his death, after the happening of the event upon which he is to take, it is to revert.—7 Words & Phrases, "Revert." A reversion can only remain in the original owner. The decree of the court is to be read as a whole to ascertain the intent, and is self correcting when it appears from the whole that some word has been inadvertently used. —23 Cyc. 1101; 1 Black on Judgment, 123; *Evans v. McMahan,* 1 Ala. 45; *Hurt v. Hurt,* 157 Ala. 126.

DE GRAFFENRIED, J.—On the 7th day of May, 1882, Mary J. Ball, of Bedford county, Tenn., was married to Clark Cross, of Jackson county, Ala. Clark Cross was a man of means, and for about a year after the marriage said parties lived together as husband and wife on a plantation of said Cross, in Jackson county. The marriage was an unhappy one, and about a year after it was contracted the wife left the home of said Cross, returned to her father in Tennessee, and on the 12th day of September, 1883, filed a bill of complaint against the said Clark Cross in the chancery court of Jackson county, Ala., wherein she prayed for a divorce

from the bonds of matrimony and for temporary and permanent alimony.

Shortly before the filing of the bill, a son the issue of the marriage, was born to the said Mary J. Cross and the fact of the birth of the child Charles Cross is set up in the bill. The divorce proceedings resulted in the rendition by the chancellor of a decree divorcing said Mary J. from the said Clark Cross granting to the mother the custody and control of the infant Charles Cross fixing the amount of temporary alimony and finally in the rendition of the following other decree: "It is adjudged, ordered and decreed that the complainant be and she is hereby allowed the value of $5,000 out of the real estate belonging to the defendant, Clark Cross, to be laid off and set apart as hereinafter directed, for the maintenance of herself during her natural life, or until she again marries, and for the support of her said child born of the wedlock of complainant and defendant, and, in the event of her death or marriage, the title in said land shall vest in said boy child of complainant and defendant, and in the event of his death, should he die after the death or marriage of his mother, it shall revert to complainant. Said lands to be in lieu of any dower interest and distribution she might otherwise have in her said husband's estate."

Under the above decree a certain tract of land of the said Clark Cross, being a part of a larger tract belonging to him, was set apart by commissioners; and the report and acts of the commissioners, in so setting the land apart, were by the chancery court, by special decree, confirmed. The said Mary J. Cross went into the possession of said tract of land and seems to have remained in possession of it until her son, Charles Cross, arrived at lawful age, when she and the said Charles Cross conveyed the land, in fee simple and with coven-

ants of warranty as to title. The purchasers went into peaceable possession, and finally I. L. Coffey became, by deeds purporting to convey a fee-simple title, and with covenants of warranty, the owner of all of the said lands. The title of the said Coffey to the said lands was derived, however, through deeds from said Mary J. Cross and her son, Charles, and his title to the lands is to be determined by the title which said Mary J. Cross and her said son, Charles Cross, obtained to the said lands under the above decree.

After the rendition of the above decree of divorce, the said Clark Cross filed in the probate court of Jackson county his written declaration adopting Charles Macklin Bass, William C. Bass, and John Benson Bass, minor sons of one Clarissa Bass, as his children so as to make them capable of inheriting his estate. In this declaration he declared that the names of these children should be Cross instead of Bass, and since that time they have been so known. Subsequent to said adoption of said children, the said Clark Cross married the said Clarissa Bass, the mother of said children so adopted by him; and the said Clarissa became the mother of a daughter of said Clark Cross, viz., Eliza Marvin Cross. The said Mary J. Cross, and her son, Charles Cross, and the said Clarissa Cross, Charles Macklin Cross, William C. Cross, John Benson Cross, and Eliza Cross, still live. The said Clark Cross died on April 5, 1907, and left behind him, therefore, as his widow, the said Clarissa Cross, his second wife, and as his heirs the said Charles Cross, the son of his first wife, Mary J. Cross, and the said Charles Macklin Cross, William C. Cross, John Benson Cross, and Eliza M. Cross.

1. On the 18th day of August, 1911, I. L. Coffey and his wife, Mary, conveyed by deed, with covenants of

warranty, the land set apart to said Mary J. Cross, as permanent alimony, to said Charles Macklin Cross and John Benson Cross. It is claimed in this proceeding that this conveyance from Coffey and wife to Charles Macklin and John Benson Cross conveyed, not a fee-simple title to said lands, but at best only a life estate and an undivided one-fifth interest in remainder in said lands. It is contended by the appellees that said Mary Cross took only a life estate in said lands, and that her said son, on the death of his father, became the owner, at best, of only an undivided one-fifth interest in remainder in said lands. This claimed defect in the title to the lands is, as we understand this record, the foundation upon which the charge of fraud, which constitutes the equity of the bill of complaint, is based. In other words, if the said Coffey and wife conveyed to Charles Macklin and John Benson Cross a perfect fee-simple title to the lands described in the deed, then the complainant is not entitled to relief.

This, then, brings us squarely to a construction of the decree under which the said Mary Cross, the first wife of Clark Cross, and her son claimed title to the said lands, and which decree we have above set out.

2. In 1 Black on Judgments, p. 138, § 123, we find the following: "The rule for the construction of ambiguous judgments is clearly stated by the Supreme Court of Kansas in the following language: 'Whenever the entry of a judgment is so obscure as not to clearly express the exact determination of the court, reference may be had to the pleadings and the other proceedings; and if, with the light thus thrown upon such entry, its obscurity is dispelled and its intended signification is made apparent, the judgment will be upheld and carried into effect in the same manner as though its meaning and intent were made clear and manifest

by its own terms.' This ruling also applies to decrees in equity. The meaning and effect of a decree may, in case of doubt, be ascertained by reference to the bill and other proceedings, particularly when these are referred to in the decree itself."

The bill for divorce, which resulted, finally, in the rendition of the above decree, showed a state of facts which, we think, indicated to the chancellor, who rendered the decree, the necessity, in his decree, of not only providing for the said Mary Cross but also of providing for her son, should she die or marry before the death of the son. The bill showed that Clark Cross was the reputed father of the children whom he afterwards adopted and that their mother was his mistress. The bill further showed that the said Clark Cross was living with the said Clarissa Bass as his mistress when he married the said Mary J. Ball, and that he openly continued his relations with the said Clarissa after his said marriage. In fact, the bill shows that the relations of Clark Cross with Clarissa and his open recognition of her children as his own, after his marriage, was the prime cause of the separation which finally resulted in the divorce proceedings. The complainant in the divorce proceedings was a young woman; her child was an infant when the decree was rendered; and there was a possibility that the complainant would again marry. The property which was set apart as permanent alimony was the property which was taken by the decree of the court in invitum from the father of said infant. The open adulterous relations of Clark Cross with the said Clarissa Bass, and the open recognition which Clark Cross, gave to her children as his children, were at least indications to the chancellor that, when he rendered the decree fixing permanent alimony, he was probably making the last provision which would ever

be made, in any way, out of the property of Clark Cross, for the benefit of the said Mary Cross or of her said child.

It was, of course, competent for the chancellor, in rendering his decree for permanent alimony, to vest the fee-simple title to the land set apart as permanent alimony in the said Mary Cross. As this is true, it was no concern of the said Clark Cross that the chancellor saw proper, in said decree, to declare that, in the event the said Mary Cross should marry or die before the death of her said son, then the son should have a life estate in the said land, and that at his death the lands should revert or go back to the said Mary Cross. We think, after a careful consideration of this case, that the chancellor, by the above-quoted decree, intended to vest in Mary Cross the fee-simple title to the land, but that he also intended that, if she died or married before the death of her said son, then the son should have a life estate in said lands. It was the evident idea of the chancellor that the complainant might again marry, and it was his purpose to declare that, if she did so, then her said son should have the use of the land as long as he lived. This provision would cut off the second husband or any children born to Mary Cross of a subsequent marriage from any use of the property while the said son of Clark Cross lived. It was also the evident purpose of the chancellor to so hedge the title decreed to the wife as that, during the life of the son, should she marry or die before he died, she could not, without the consent of the son, sell it, devise it by will, or otherwise dispose of it, so as to defeat his right to use and occupy it so long as he lived. Putting this construction upon the decree, no word is changed in it, and we feel that in so construing the decree we have given that effect to it which the chancellor's words were in-

tended to express. There is, of course, an element of doubt about this matter, but after a full and careful consideration of the record, had in consultation before the preparation of this opinion, the above is the effect of our conclusion.

The above being true, the decree of the court below is reversed; and a decree is here rendered dismissing the complainant's bill of complaint.

Reversed and rendered. All the Justices concur.