73 So.2d 740

**RHODES**

v.

**ROADWAY EXPRESS CO.**

7 Div. 183.

Supreme Court of Alabama.

May 13, 1954.

Marvin Williams, Jr., Davies & Williams, Birmingham, for appellee.

W. M. Beck, Fort Payne, and J. C. Fleming, Elba, for appellant.

GOODWYN, Justice.

Appeal by plaintiff from judgment granting new trial to Roadway Express Company, one of the defendants.

Plaintiff brought suit in the circuit court of DeKalb County against Roadway Express Company, a corporation, Roy Brooks, Jr., Roy Brooks, Sr., and T. T. Brooks, to recover damages for personal injuries allegedly resulting from a collision of two motor vehicles on a public highway.

Prior to entering on the trial, the plaintiff moved for and was granted a non-suit as to defendant Roy Brooks, Jr.

The case went to the jury on Count B. It is averred in this count that plaintiff's injuries were caused by the negligent operation of "a truck belonging to the defendants and which was being operated by one of its servants, agents or employees, acting within the line and scope of his employment." It is also averred that plaintiff's injuries resulted from "the negligent act of the defendants' servants, agents or employees, acting within the line and scope of their authority in driving said truck".

. The evidence, in substance, is as follows: Appellant was a passenger in an automobile being driven by one Jesse H. Whitmire when said automobile collided with a truck being driven by Roy Brooks, Jr. At the time of the accident, the two vehicles were proceeding in opposite directions. There is conflicting evidence as to the speed of the Whitmire automobile. It is without conflict that Roy Brooks, Jr., was operating the truck and that, just before the collision, he was proceeding to make a left-hand turn into a filling station. It is not clear whether he had come to a complete stop.

The truck was owned by T. T. Brooks who had leased it to Roadway Express Company. Under the terms of the lease T. T. Brooks was obligated to keep the vehicle in repair. The regular driver of the truck was Roy Brooks, Sr., a nephew of T. T. Brooks and the father of Roy Brooks, Jr. Roy Brooks, Sr., was selected by T. T. Brooks as driver of the truck but his employment was approved by Roadway Express Company. While operating the vehicle on the business of Roadway Express Company, Roy Brooks, Sr., received his instructions about where to go to pick up a load or where to deliver a load from that company. Roy Brooks, Sr., was permitted to have minor repairs made on the truck while on the road but was reimbursed for any such expenses by T. T. Brooks, the owner of the truck. Roy Brooks, Jr., was not authorized to drive the truck at any time by T. T. Brooks nor by Roadway Express Company.

On the day before the accident, Roy Brooks, Sr., contacted the Gadsden office of the Roadway Express Company, where he was scheduled to go to pick up his next load, and informed the company that he would be delayed because the truck was in need of certain repairs. This call was made from a point in Tennessee. Thereafter, Roy Brooks, Sr., drove the truck to his home at Rainsville, Alabama, where he spent the night. The next morning he took the truck to Wheeler's garage for the repairs. Neither Roy Brooks, Sr., T. T. Brooks nor Roadway Express Company had any interest in Wheeler's garage. Roy Brooks, Jr., was employed by that garage and had worked there off and on for about three years. He was not an employee of Roadway Express Company, nor of T. T. Brooks, nor of Roy Brooks, Sr. While the truck was at the garage for repairs, Roy Brooks, Jr., drove it to Peacock's garage to get a lug wrench and to a drug store for "Band-Aids". It was while returning to Wheeler's garage from this trip that the accident occurred. The garage owner, J. V. Wheeler, testified that he sent Roy Brooks, Jr., on this trip. His testimony in this respect is as follows:

"Q. Did you send Roy Brooks, Jr. any where in the tractor? A. I told him to take the tractor, and go and get a 4-wheel lug wrench and get a package of Band Aids. I had cut my finger.

"Q. Did Mr. Brooks tell him, or did you? A. I told him.

"Q. Where was Roy Brooks, Sr.? A. In the back of the shop working on his car.

"Q. How far away was he? A. The tractor was setting out in front of the building, and he was back at the back end of the shop."

On cross-examination, Roy Brooks, Sr., testified as follows:

"Q. Then, you did talk about not having a lug wrench, and having to send after one? A. We never said anything about going after one, I don't reckon.

"Q. You did discuss about not having a lug wrench? A. Yes, sir.

"Q. Isn't it a fact that while you all were all together, you and your son and Mr. Wheeler, you talked about having to send up to the garage to get that lug wrench? Isn't that a fact, Roy? A. I don't recollect. That has been too long ago.

"Q. You wouldn't say you didn't? A. I wouldn't say I did.

"Q. You don't say you didn't? A. No sir."

There is evidence, also, that Roy Brooks, Jr., had, from time to time, driven the truck. His father testified that at times he drove it, but only to the filling station to get gas.

Plaintiff testified that Roy Brooks, Sr., right after the accident, came up to the car in which plaintiff and Jesse Whitmire were about to be brought to town and said: "It is all my fault. I had no business sending the boy off with the truck. I have plenty of insurance on the car. You fellows get to town the best you can, and everything will be taken care of. I feel like this will cause me to lose my job, too." Jesse Whitmire testified that Roy Brooks, Sr., made the following statement at that time: "I had no business sending that boy out here. It is my fault. Go on to town and get fixed up." This testimony was given over de-

fendants' objection and was held by the court to be admissible against Roy Brooks, Sr., but "not against the other defendants". Roy Brooks, Sr., denied making any such statement.

The repairs to the truck were paid for by Roy Brooks, Sr., for which he was reimbursed by T. T. Brooks. Roy Brooks, Jr., was paid for the work he did on the truck by the garage owner.

The jury assessed damages against Roadway Express Company but returned a verdict in favor of the defendants Roy Brooks, Sr., and T. T. Brooks. Roadway Express Company filed a motion for a new trial, assigning twenty-one grounds in support thereof. The trial court, in its judgment granting the motion, stated as follows:

"In addition to the usual grounds there are several others set out in the motion which raise the propositions that the verdict of the Jury is inconsistent and repugnant in that it found against the Defendant, Roadway Express Company, but did not find against Roy Brooks, Sr., the agent of that Company; and that the driver of the automobile at the time of the act complained of was not the agent of the Roadway Express Company and was not acting within the line and scope of its business. The other grounds raised by the motion will not be dealt with in this order since, in the opinion of the Court, the above mentioned grounds set out the primary and controlling questions raised."

In reviewing the action of the trial court in granting a motion for new trial, the inquiry is not limited to the grounds on which the motion was granted. Sullivan v. Alabama Power Co., 246 Ala. 262, 269, 20 So.2d 224. And it is open to appellee to show error in the trial on any other of the grounds assigned in the motion. Sullivan v. Alabama Power Co., supra; Thomas v. Carter, 218 Ala. 55, 59, 117 So. 634. However, when as here, the trial court specifies the ground upon which the motion is granted, this court, when considering another ground of the motion, will not in-

dulge in favor of such other ground the presumption which we would accord the ground specified. Cook v. Sheffield Co., 206 Ala. 625, 626, 91 So. 473. One of the grounds assigned in the motion, but not specified by the trial court as a ground for granting the motion, and here stressed by appellee, is that the verdict against Roadway Express Company was against the great weight and preponderance of the evidence. Since no presumption is to be indulged with respect to said ground, we must consider as an original proposition whether such verdict was against the great weight and preponderance of the evidence. We have given most careful consideration to the evidence and have discussed it fully in consultation. Our conclusion is that the granting of the motion for a new trial in favor of Roadway Express Company could well have been based on said ground. As we see it, the verdict against said defendant is against the great weight and preponderance of the evidence under both the theory of respondeat superior and the doctrine approved in Emison v. Wylam Ice Cream Co., 215 Ala. 504, 111 So. 216; Harris v. Bell, 234 Ala. 679, 176 So. 469, on which appellant places principal reliance.

One question which calls for discussion relates to the furnishing of forms of verdicts for use by the jury. In his oral charge, the trial judge stated as follows: "Gentlemen of the Jury, there are several possible verdicts in this case for the plaintiff against one or more of the defendants. I am going to ask the attorneys for each side to write out forms which might aid you in preparing your verdict, after you reach your decision."

The forms prepared by counsel were delivered to the jury together with the other papers in the case, and without being actually presented to the court for approval. Thus, no opportunity was afforded for interposing objections to any of said forms.

On consideration of the motion for new trial, affidavits of counsel with reference to these forms were presented to the trial court. These show that the form of verdict returned by the jury was prepared by counsel for defendants. The record also reflects an affidavit of counsel for defendants indicating that the forms were prepared at the request of the court only on the condition that "the defendants would not in anywise be prevented or estopped from claiming or asserting the invalidity of any verdict that might be rendered by the jury." The judgment entry of the court granting the motion for a new trial indicates that it was not the intention of the court that "the parties should be bound by the verdicts merely because they had prepared forms."

Appellant argues that to allow the defendant Roadway Express Company to attack the verdict, the form of which was prepared by its counsel, would be unjust and would allow said defendant to benefit by its own wrong; and that, for this reason, defendant Roadway Express Company is estopped from attacking the verdict against it. While we recognize the validity of the suggested equitable principle we cannot agree that it should be applied here so as to deny to Roadway Express Company its right to a new trial.

The judgment appealed from is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.