133 So.2d 681

Carl BULLARD, pro ami.

v.

Troy WILLIAMS.

8 Div. 523.

Court of Appeals of Alabama.

Dec. 15, 1959.

Rehearing Denied Jan. 12, 1960.

Affirmed on Mandate Oct. 17, 1961.

Clark E. Johnson, Jr., Albertville, for appellee.

Lusk & Lusk, Guntersville, for appellant.

PRICE, Judge.

Plaintiff brought suit against defendant claiming, in count one of the amended complaint, $300 for work and labor from September 25, 1957, to November 7, 1957, under an agreement whereby defendant was to pay plaintiff $200 per month, and in count two, for $300 for money loaned by plaintiff to defendant.

The cause was tried to the court and jury. The jury returned verdict for the plaintiff for the amount of $400.

The defendant filed motion for a new trial, which was granted by the trial court. The plaintiff has appealed from that order.

Appellant contends the order granting the motion for a new trial was based on grounds 7, 8 and 9 of the motion. These grounds are as follows:

"7. For that the verdict of the jury is the result of bias, prejudice or fraud on the part of one of the jurors, to wit: E. W. Cox. That said juror strongly advocated in the deliberations of the jury that the jury return a verdict for the plaintiff, and that said juror, after the jury had completed, its deliberations and made its verdict, carried away from the custody of the Court and from the jury room two exhibits, to wit: plaintiff's exhibits D and A knowing at the time that one of the exhibits to wit: Exhibit D was alleged to be a forgery and that the signature of M. T. Williams appearing on said Exhibit D was alleged to be a tracing or a copy of the signature of M. T. Williams which appeared on said Exhibit A. That said juror carried said exhibits to his home or place of business and denied, upon being questioned, having the possession of the same and only after a persistent effort on the part of law enforcement officers were said exhibits regained and returned to the custody of the Court. That said conduct on the part of said juror cast such a shadow of fraud upon the verdict of the jury that the same should be set aside and held for naught.

"8. The verdict of the jury should be set aside because of the misconduct of one of the jurors who was empaneled and sat on the jury in this cause, said juror being one E. W. Cox. That said juror, knowing that plaintiff's exhibit D, an alleged receipt with the signature of the defendant, M. T. Williams appearing thereon, was alleged to be a forgery and a tracing or a copy of the said defendant's signature which appeared on plaintiff's exhibit A, carried said exhibits away from the custody of the Court and from the jury room and retained possession of the same after the jury had been discharged. That said juror denied having the possession of said exhibits and only after persistent effort on the part of officials of the Court were said exhibits regained from the possession of said juror and returned to the custody of the Court. That at said time there was pending a criminal case involving the charge of forgery and concerning said exhibits A and D against one F. M. Bullard, the father of the plaintiff.

That such conduct cast a shadow of fraud across the verdict of the jury and the same should not be allowed to stand, but should be set aside and held naught.

"9. That the verdict of the jury is the result of bias, prejudice, passion or fraud on the part of the jury or one or more of the members of the said jury."

At the hearing on the motion two witnesses were called to testify with reference to the alleged misconduct of the juror Cox. H. M. Gilley, Jr., the Circuit Clerk, stated he also served as clerk of the county court, and that at the time of this trial there was pending in the county court a certain criminal charge against F. M. Bullard. There followed a colloquy between counsel, and the court sustained objections interposed by appellant's counsel to questions concerning any criminal case involving F. M. Bullard. Mr. Hubert Hipp testified he was a deputy sheriff and that he acted as jury bailiff during the trial in this case; that he was familiar with Exhibits A and D, which consisted of a note and receipt, and that he gave these documents to the jury when they retired to begin their deliberations; that the exhibits and documents were turned back to him by the jury between 8:30 and 9:00 o'clock that night; that he did not then look at the exhibits, but placed them in the judge's office; that all the exhibits that had been handed around by the jury were in the file when he got it back; that he looked around the jury room to see if there were any papers that might have been taken from the file; that the first he knew anything was missing was when the judge called for these exhibits next morning; that in making an investigation he talked to some of the jurors and then went to juror Cox's home, some fifteen miles away; that at that time Mr. Cox said he didn't have the papers; that he went back and talked to him a second time. The witness stated that on the second trip, "I told him some of the papers, the exhibits, from the file were gone and he might have them and asked him to look and see if he had them and he looked in his coat pocket and

he had the note and receipt folded up in another note in his back pocket and then said it appeared he must have picked them up through a mistake."

This was all the evidence introduced with reference to the alleged misconduct of the juror.

In Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16, 20, the court said:

"But misconduct of a juror should indicate bias or corruption in the performance of duty, or the circumstances should indicate that his misconduct has influenced the verdict rendered."

■ The party complaining of jury misconduct has the burden of showing probable injury. See Ala.Digest, New Trial, ☞140 (3).

■ It is our opinion the evidence on the motion does not show such misconduct on the part of the juror as to indicate bias or corruption in the performance of his duty or that injury probably resulted to the appellee from such conduct. We are, therefore, of the opinion the court was not justified in granting defendant's motion for a new trial based on those grounds.

The order sustaining the motion for a new trial recites:

"On this the 10th day of October, 1958, the foregoing motion being heard this day and understood by the court, the court is of the opinion justice would be best served by awarding a new trial in this case under all the circumstances."

■ Judgments are to be construed like other written instruments. Schwab v. Schwab, 255 Ala. 218, 50 So.2d 435. The rule for the construction of judgments is:

"Whenever the entry of a judgment is so obscure as not to clearly express the exact determination of the court, reference may be had to the pleading and other proceedings; * * *."

Coffey v. Cross, 185 Ala. 86, 64 So. 95, 96; Doss v. Wadsworth Red Ash Coal Co., 185 Ala. 597, 64 So. 341.

Upon a consideration of the proceedings at the hearing on the motion, together with the recitals of the judgment, we are of the opinion the judgment shows that the grounds for the sustaining of the motion for a new trial was the alleged misconduct of the juror.

"The action of the trial court is sustainable if there was any proper ground in the motion, regardless of whether the ruling may have been rested on an improper ground. Mills Lumber Co. v. Hull, 222 Ala. 229, 131 So. 902. And it is open to appellee to show error in any other of the several grounds assigned in the motion. Thomas v. Carter, 218 Ala. 55, 59(7), 117 So. 634." Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224, 230.

Appellee contends the order granting the motion was not based solely on the grounds of jury misconduct, but, in brief, advances as reasons for the order, in addition to jury misconduct, grounds 1 through 5, which present the question of the weight of the evidence, and grounds 20, 21, 22, 23, 25, 26 and 27, which assert error in the court's rulings during the direct examination of the plaintiff's witness, J. O. Rice.

■ Because of the absence of the court reporter who took the testimony on the trial, defense counsel requested the trial court to take judicial knowledge of the testimony introduced on the trial. When, as here, the same judge tries the case and hears the motion for new trial it is presumed that all the evidence is in the breast of the court, and the evidence on the trial need not be reintroduced on the motion in support of an assignment that the verdict is contrary to the evidence. Moneagle & Co. v. Livingston, 150 Ala. 562, 43 So. 840; Allison v. Cox, 220 Ala. 624, 127 So. 192.

·The tendencies of plaintiff's evidence are to the effect that plaintiff's father, F. M. Bullard, operated a country store near Boaz. Plaintiff, 19 years of age, lived with his father and worked at odd jobs. The defendant, Troy Williams, resided at Boaz but worked at Piedmont, in Calhoun County. Defendant wanted to go into the used car business closer to home, but was unable to borrow the money. In the summer of 1957 he went to F. M. Bullard to borrow money for this venture, agreeing to rent from Mr. Bullard a small garage building at $12.50 per month, and to hire the plaintiff, Carl Bullard, and pay him $200 a month wages as a helper to clean and recondition used cars. On September 25, 1957, F. M. Bullard went with Carl Bullard and the defendant to J. O. Rice, a real estate agent at Boaz, and borrowed $1,000. Williams and Carl Bullard signed the note as nominal sureties. The check was made payable to F. M. Bullard. Mr. Rice said to F. M. Bullard, "I am looking to you for my money." F. M. Bullard cashed the check and turned the money over to Williams. Williams went to Chicago with the money to buy cars. On October 25, 1957, F. M. Bullard paid half the $1,000 note and signed a new note for the balance. He later paid the debt in full, with interest. Williams did not sign the renewal note.

Plaintiff worked for defendant from September 25, 1957, to about November 7, 1957, when Williams quit the used car business to accept a job on the Boaz police force. Plaintiff, Carl Bullard, accompanied defendant on his first buying trip to Chicago, driving his own 1950 Mercury. While in Chicago he sold the car for $300 and loaned the money to defendant. Defendant never repaid this money and paid plaintiff only $10 as wages.

Shortly after defendant began operating his used car business he learned that F. M. Bullard was about to buy a new pickup truck and he asked Mr. Bullard to take a used Oldsmobile at $300, the price defendant had paid for it, so that Mr. Bullard could trade it in on the new truck. On October 9, 1957, defendant asked F. M. Bullard for the $300, and received it, sign-

ing a receipt therefor, which was introduced in evidence as Exhibit "D." The receipt is in words and figures as follows:

"Recev'd from F. M. Bullard $300.00 paid in full for 19–52 Olsmobile that he traded in on a 57 Ford pick up truck at Jack Olivers Motors, Boaz, Alabama.

M. T. Williams."

After Troy Williams quit the used car business F. M. Bullard took possession of two used cars defendant had left standing in Bullard's garage and sent them by Carl Bullard to the auction and kept the proceeds, $485.

On December 13, 1957, Troy Williams filed a suit in equity court against F. M. Bullard.

The testimony for defendant tended to show that he did not borrow any money from F. M. Bullard. He testified that he and F. M. Bullard entered into a partnership agreement whereby Mr. Bullard would borrow $1,000, defendant signing the note with him. They were to engage in the used car business. Defendant was to put into the business $630, which he already had, plus $500 of the borrowed $1,000, and F. M. Bullard was to put the other $500 in the business. Defendant's responsibility was to "pull" cars from the north. F. M. Bullard was to furnish the garage building rent free, clean the cars and help sell them. Defendant never had any agreement with Carl Bullard about working at the garage, but since F. M. Bullard could not render personal service to the partnership, he sent his son to perform his duties under the partnership agreement. The profits were to be divided equally between F. M. Bullard and Troy Williams. Defendant denied that Carl Bullard ever gave him any money from the sale of his car. He stated that F. M. Bullard bought the 1952 Oldsmobile for $450, but never paid for it, and that he did not sign the receipt. He continued in the used car business a little over a month, until he accepted an offer of employment from the Boaz Police Department. He testified he did not owe Carl Bullard any money. Defendant further testified he bought and sold cars as Williams Motors. When the cars were sold the money was turned over to F. M. Bullard.

L. P. Dickson, Sheriff of Marshall County, testified he had read a book on the subject of handwriting analysis, and had made some study of the subject; that he had been shown points of handwriting comparison analysis by Dr. Rehling and C. D. Brooks, but that he had had no extensive training and did not claim to be a handwriting expert; that he compared the signature of M. T. Williams on the note with his signature on the $300 receipt, by superimposing the signature on the receipt over the signature on the note and holding them up to a window; that the signatures were identical and that it is not possible for a person to duplicate his signature and that in his opinion the signature on the receipt was spurious.

In Cook v. Sheffield, 206 Ala. 625, 626, 91 So. 473, 475, the court said:

"It is * * * well settled that in reviewing the action of a trial court in granting a motion for a new trial this court indulges in the same presumption in favor of the ruling as when the motion is denied, and will not disturb the ruling unless it appears that the great weight of the evidence plainly and palpably supported the verdict that was so set aside. And if the trial court does not specify the ground, and the motion contains the ground that the verdict was contrary to the evidence, this court can infer that the ruling was based on said ground, and will indulge the presumption as above set forth in favor of said judgment, but it is neither sound nor logical to indulge such a presumption in favor of the trial court when its judgment negatives the fact that the ruling was based upon this ground of the motion."

Since we have concluded the motion was not granted on the grounds of in-

sufficiency of the evidence, no presumption is to be indulged in favor of such grounds. Cook v. Sheffield, supra, Rhodes v. Roadway Express Co., 261 Ala. 14, 73 So.2d 740. From a consideration of the evidence we are of opinion the verdict was not so clearly against the weight and preponderance of the evidence as to warrant a new trial on that ground.

During the direct examination of plaintiff's witness J. O. Rice, the witness was first asked if he remembered when F. M. Bullard came to him in August or September and borrowed some money. The witness answered, "Yes, sir, I do." The following questions and answers then appear in the record:

"Q. And had Troy Williams been to you before and tried to borrow that $1000.00? A. He had.

"Q. And you had refused him? A. Well, I wouldn't exactly call this a refusal.

*       *       *       *       *       *

"A. Bullard mentioned about the money for Williams first before I ever met Williams.

"Q. Did you lend it to Williams? A. Not on that occasion, I didn't."

There followed a colloquy between counsel and the witness, then the following occurred:

"Q. Did you ever lend any money directly to Williams? You can answer that, can't you? A. Yes. I can answer it. No. Not directly to Williams, I didn't."

*       *       *       *       *       *

"Q. All right, now. When they came to your office to see about borrowing that $1000.00, what did Bullard say to you at that time what he was borrowing it for?

*       *       *       *       *       *

"Q. In Williams presence what did he say? A. There was no discussion about the money. I told Bullard at the station that he could get the money. I typed out a check to Bullard, looked him in the face and said, 'I am looking to you for my money.' That's exactly the words I said.

"Q. Mr. Rice, I asked you this question: What Bullard said at that time when the note was signed as to what— A. I don't remember any discussion at that time. Don't remember anything."

The witness was asked if he remembered testifying as a witness in the equity court and he answered in the affirmative. This question was then asked:

"Q. Isn't it true that Williams came to you first and tried to borrow $1000.00? And didn't you answer that as follows: 'Yes.' Do you remember that?"

The following questions were asked the witness:

"Q. All right. Now, Mr. Rice, to refresh your recollection were you not asked on the equity hearing the question: Did you not loan the money to Mr. Williams on his security alone? Do you recall, to refresh your recollection, that you then and there said: 'No, sir. I put him Off.' "

The court sustained objection interposed on the ground that plaintiff was seeking to impeach his own witness. After further colloquy this question was asked the witness:

"Q. To refresh your recollection didn't Mr. Bullard at that time when you were lending the money to Mr. Bullard and telling him that you were looking to him to repay it, did he not say at that time in Mr. Williams' presence that he was borrowing that money from you to lend it to Williams? A. I have no recollection of that."

Thereupon counsel for plaintiff stated to the court that he was electing to declare

Mr. Rice a hostile witness and proposed to impeach him as a hostile witness. The court overruled defendant's objection to plaintiff's counsel's statement and to the fact of plaintiff's impeachment of his own witness. The witness was then asked if on the occasion of the hearing in the equity court this question was asked him:

"Q. Isn't it true Williams came to you first and tried to borrow $1,000.00? Didn't you answer 'yes?' A. I did."

Defense counsel moved to exclude the answer. The court overruled the motion. Counsel then asked:

"Q. Didn't I ask you this and you didn't loan it to him on his security alone? Didn't you say: 'No, sir. I put him off. Didn't you say that?

"A. It is true."

The plaintiff was permitted, over defendant's objection on the ground that it is hearsay to ask a witness what he said on another occasion and on the further ground the plaintiff was seeking to impeach his witness, to ask the witness:

"Q. When I asked you down there in the equity court if after your refusal to loan Williams $1000.00, if when Bullard came to you and borrowed the $1,000.00 he said that it was so he could lend it to Williams. Didn't you in answer to that question say: That's correct?

\* \* \* \* \* \*

"A. Whatever I said down there, I said. Whatever it was."

This question was then asked:

"Q. And didn't I ask you again the second time: And Bullard said at that time that he was borrowing the money from you so he could lend it to Williams, is that true?

"A. No, sir.

\* \* \* \* \* \*

"A. I didn't say that."

The law is well settled that a party has no right to impeach his own witness, but when he is taken by surprise and denotes such surprise, he may interpose questions to the witness as to his previous statements which are inconsistent with his present testimony. Woods v. State, 37 Ala. App. 668, 74 So.2d 535; Ray v. State, 29 Ala.App. 382, 197 So. 70; Louisville & N. R. Co. v. Scott, 232 Ala. 284, 167 So. 572; Woods v. State, 38 Ala.App. 582, 90 So.2d 92; McMillian v. State, 268 Ala. 363, 106 So.2d 244. We find no error prejudicial to defendant in the court's ruling here.

We find no merit in the remaining grounds of the motion and pretermit a discussion of such other grounds.

The judgment of the trial court granting the motion for a new trial is reversed and a judgment is rendered reinstating the verdict of the jury and the judgment thereon in favor of the plaintiff.

Reversed and rendered.

### After Remandment

PER CURIAM.

Upon former consideration of this appeal, we were of the opinion that the trial court's judgment granting a new trial was not based on the ground that the verdict was contrary to the great preponderance of the evidence.

Upon certiorari to the Supreme Court the writ was granted, the court holding that we were in error in our conclusion, and that we are to presume that the judgment was based on the ground that the verdict is contrary to the evidence. The judgment of this court was reversed and the cause remanded for our further consideration.

Upon a reconsideration of the evidence, which is set out in our original opinion, after indulging all reasonable presumptions in favor of the court's ruling on the motion, we cannot say the evidence so plainly and palpably supports the verdict as

to put the trial court in error for granting a new trial on the ground that the verdict is contrary to the evidence. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738.

The judgment of the Circuit Court is affirmed.

Affirmed.