Rel: March 28, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

———————————————

## CL-2023-0485 and CL-2023-0619

———————————————

### Jessica Layne Chapman

### v.

### Frederick Kyle Chapman

### Appeals from Chilton Circuit Court
### (DR-14-900112.01 and DR-14-900112.02)

FRIDY, Judge.

Jessica Layne Chapman ("the mother") appeals from two judgments entered by the Chilton Circuit Court ("the trial court"); in the first judgment, the trial court modified the custody of the two children of the mother and Frederick Kyle Chapman ("the father"), and, in the

second judgment, the trial court found the mother in contempt and suspended her visitation with the children. We affirm the judgments.

Procedural History

The parties are the natural and legal parents of two children, a son born in 2010 and a daughter born in 2013 ("the children"). The parties divorced in 2016. The judgment of divorce, as last amended, vested the parties with joint legal custody of the children and awarded the mother sole physical custody of the children subject to the visitation rights of the father, which included the right to telephone contact each night with the children. The divorce judgment further required the parties to notify one another of any change in address.

On March 2, 2018, the father filed a petition requesting that the trial court find the mother in contempt for violating the telephone-contact and relocation provisions of the divorce judgment and award him sole physical custody of the children, along with child support; that petition was assigned case number DR-14-900112.01.

On May 1, 2019, after a bench trial, the trial court entered an order that, among other things, awarded the father sole physical custody of the children, required the father to keep the mother informed of any medical

2

or educational issues involving the children, ordered the mother to pay the father monthly child support in the amount of $382, ordered the father to provide health insurance for the children, provided that the parties were to equally split the costs of the children's health-care expenses not covered by insurance, awarded the mother specified visitation rights, and specified the manner in which the parties would exchange the children's prescription medications for visits. Based upon the mother's motion to reconsider, the trial court amended the order to, among other things, apply the custody-modification standard established in Ex parte McLendon, 455 So. 2d 863 (Ala. 1984), but, nevertheless, sustained the change of custody. The trial court did not address the contempt claims raised by the father in the order or the amended order. See Decker v. Decker, 984 So. 2d 1216 (Ala. Civ. App. 2007) (holding that the failure to adjudicate all pending contempt claims renders a judgment nonfinal).

On June 25, 2020, the father filed a petition alleging that the mother was in contempt of court for violating the terms of the May 1, 2019, order; that petition was assigned case number DR-14-900112.02. While that case was pending, the trial court entered several pendente lite

orders suspending or restricting the mother's visitation with the children. On June 6, 2022, the trial court consolidated the two cases for trial purposes. Although the trial court purported to set aside the consolidation order, the trial court continued to enter orders in both cases until May 30, 2023. On that date, the trial court entered a judgment in case number DR-14-900112.01 that denied all unadjudicated claims. On July 10, 2023, the mother timely filed a notice of appeal from the May 30, 2023, judgment, and this court docketed her appeal as appeal number CL-2023-0485.

On July 24, 2023, the trial court entered a final judgment in case number DR-14-900112.02. In that judgment, the trial court determined that the mother was in contempt of court for failing to pay child support, for failing to pay her portion of the noncovered health-care expenses for the children, for keeping funds that had been received due to the COVID-19 pandemic ("the COVID-19 stimulus funds") and were intended for the benefit of the children, and for placing the children on "government insurance." The trial court ordered the mother to pay the father $11,500 in attorney's fees and to pay the father the entire amount of the COVID-19 stimulus funds that she had received on behalf of the children.

4

CL-2023-0485 and CL-2023-0619

Additionally, the trial court modified the visitation provisions of the May 1, 2019, order that had been entered in case number DR-14-900112.01 as follows:

> "[The m]other's visitation as stated in the Order of Modification dated May 1, 2019[,] is modified and limited to visits, when they can be scheduled, through The Wellness Group, at the expense of the mother, until the mother is evaluated and it is recommended to this Court that the mother[']s supervision should be lifted, for the benefit of the children. Upon [the] mother[']s evaluation through The Wellness Group, and [when] it is reported to the Court that [it] is of no danger ... for the mother to have unsupervised visitation, then the visitation shall be re-evaluated by this Court."

On September 5, 2023, the mother timely filed a notice of appeal from of the July 24, 2023, judgment, and this court docketed her appeal as appeal number CL-2023-0619. On September 19, 2023, this court consolidated appeal number CL-2023-0485 and appeal number CL-2023-0619.

## Issues

In appeal number CL-2023-0485, the mother argues that the trial court erred by applying the wrong custody-modification standard and by modifying custody of the children without sufficient evidence. In appeal number CL-2023-0619, the mother argues that the trial court erred by modifying her visitation rights, by finding her in contempt of court for

5

actions that did not violate a previous court order, by ordering her to pay attorney's fees to the father, and by failing to order the father to pay her attorney's fees.

## Analysis

### I. Appeal Number CL-2023-0485

When a judgment awards one party sole physical custody of a child, that custody provision may be modified only according to the standard set forth in Ex parte McLendon, supra, which requires the petitioner to demonstrate "(1) 'that he or she is a fit custodian'; (2) 'that material changes which affect the child's welfare have occurred'; and (3) 'that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.'" Marshall v. Marshall, 346 So. 3d 1008, 1018 (Ala. Civ. App. 2021) (quoting Kunkel v. Kunkel, 547 So. 2d 555, 560 (Ala. Civ. App. 1989)). In this case, the 2016 divorce judgment awarded the mother sole physical custody of the children, so the father had to meet the Ex parte McLendon standard to obtain a change of custody.

In its May 1, 2019, order granting the father's custody-modification petition, the trial court found that it was in the best interests of the

children to modify the custody provisions of the divorce judgment. In her motion to reconsider, the mother pointed out that the Ex parte McLendon standard requires more than just a showing of best interests, which is the standard to be applied when a court modifies a joint-physical-custody arrangement. See Ex parte Couch, 521 So. 2d 987, 989 (Ala. 1988). The trial court subsequently amended the order to provide, in pertinent part:

> "1. The May 1, 2019[,] order is adopted in full.
>
> "2. That the custody of the ... children is placed with the father, in that the benefit of the father having custody of the[] children over the mother wi[ll] greatly benefit them and any disruptive effect of the change of the residence is outweighed by the benefit to the children. With the father, the stability of the household is improved. Their medication is metered more regular and there are fewer disturbances surrounding the family unit."

The mother argues that the trial court failed to apply the Ex parte McLendon standard because it adopted the May 1, 2019, order "in full," which, she says, indicates that the trial court reapplied the best-interests-of-the-child standard when deciding the custody dispute. The mother has engaged in a strained interpretation of the order. From the context of the proceedings, and the wording of the amended order, it is apparent that the trial court adopted the May 1, 2019, order except to the

extent that it amended the order to apply the Ex parte McLendon standard as the mother requested. When any alleged ambiguity in a judgment is dispelled by a reference to the record, "'the judgment will be upheld and carried into effect in the same manner as though its meaning and intent were made clear and manifest by its own terms.'" Coffey v. Cross, 185 Ala. 86, 91-92, 64 So. 95, 96 (1913) (quoting 1 Black on Judgments § 123).

The mother also argues that the trial court failed to expressly find in the amended order that there had been a material change of circumstances since the entry of the divorce judgment, which is a component of the Ex parte McLendon standard. "It is ... well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parte Bryowsky, 676 So. 2d 1322, 1324 (Ala. 1996). Because that implied finding is not clearly erroneous, as we will explain, the trial court did not commit reversible error by failing to expressly find that a material change of circumstances had occurred.

In the context of child custody, a material change of circumstances is a change in the circumstances of the parties since the entry of the last custody judgment "'such as to affect the welfare and best interest of the child or children involved.'" Watters v. Watters, 918 So. 2d 913, 916 (Ala. Civ. App. 2005) (quoting Ponder v. Ponder, 50 Ala. App. 27, 30, 276 So. 2d 613, 615 (Civ. 1973)). In her brief to this court, the mother claims that, in the 2016 divorce proceedings, the trial court considered the same circumstances that led the father to file his custody-modification petition in 2018. To prove her point, the mother attaches to her appellate brief documents from the record of the 2016 divorce proceedings, some of which were not made part of the record in these appeals; however, this court cannot consider attachments to appellate briefs that are not contained in the appellate record. Jackson v. Davis, 153 So. 3d 820, 829 (Ala. Civ. App. 2014).

During the 2019 trial of the custody-modification petition, the father's attorney indicated that he would question the mother only regarding events occurring after May 2, 2016, the date of the divorce judgment. The record shows that the trial court conducted postjudgment proceedings in the divorce case after May 2, 2016, that led to an amended

9

divorce judgment being entered on July 18, 2016. However, during the postjudgment hearing, the mother did not object to the introduction of evidence relating to events occurring between May 2, 2016, and July 18, 2016. The mother cannot now argue on appeal that the trial court should have limited its inquiry to events occurring after July 18, 2016. See Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992) ("[An appellate court] cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.").

The trial court heard evidence indicating that, between May 2, 2016, and March 8, 2019, the mother had moved with the children four times and had temporarily stayed with her mother on one occasion and with a friend on another occasion. During that period, the mother also allowed two different men to stay overnight with her when the children were present, which the amended divorce judgment prohibited. Although the father was to have telephone contact with the children between 7:00 p.m. and 8:00 p.m. each night when they were with the mother, the mother only rarely would answer his calls. By May 1, 2019, the mother was involved in a relationship with a third man. The mother appeared to

10

have an active social life, and she had allowed a friend, who had lost custody of all seven of her children and who was subjected to random drug testing by the Department of Human Resources, to babysit the children on one occasion. The mother earned approximately $1,200 per month in gross income from cleaning houses, which was largely consumed by ordinary household expenses. Meanwhile, the father had remarried in January 2018 to a medical assistant, and he had moved into her three-bedroom house; together, they earned approximately $5,600 a month.

The children were both diagnosed with behavioral problems for which they were prescribed medication. The mother did not communicate with the father regarding the precise dosage of the medications that were to be administered to the children during visitations. While in the mother's care, the younger child did not perform well in kindergarten. After the father obtained pendente lite custody of the children, the mother did not turn over the children's medications, and she would not respond to telephone calls or text messages about the medications. The father would have to ask the school nurse to give the children the medications that they needed in the mornings. The father's wife soon

discovered at a doctor's visit that the older child had been prescribed an evening dose of medication about which the mother had not informed the father. Through the intervention of the father's wife, the older child's added evening dosage was eventually eliminated by the child's doctor. The prescription for the younger child was also changed in February 2019. At first, the behavior of the younger child worsened due to the change, but, by the end of March 2019, the younger child was consistently behaving well and was receiving positive reports from her kindergarten teacher. Nevertheless, the younger child's kindergarten teacher, who testified at trial, believed that the younger child should repeat kindergarten primarily due to her poor progress before February 2019. When the father informed the mother of that development, the mother did not ask to meet with the teacher or to discuss the matter with the father.

From that evidence, the trial court could have reasonably determined that there had been a material change of circumstances. Furthermore, the trial court reasonably could have also determined that the positive good from transferring custody of the children to the father would outweigh any disruptive effects to the children. The mother argues

12

that the trial court modified custody solely to resolve visitation disputes between the parties and based solely on evidence indicating that he had remarried and had improved his personal circumstances, none of which, she maintains, is sufficient to meet the Ex parte McLendon standard. See Cochran v. Cochran, 5 So. 3d 1220 (2008); Watters v. Watters, 918 So. 2d 913 (Ala. Civ. App. 2005); Evans v. Evans, 978 So. 2d 42 (Ala. Civ. App. 2007). However, as the trial court specifically found, the children would tangibly benefit from residing in the father's home where "the stability of the household is improved" and the children's "medication is metered more regular[ly] and there are fewer disturbances surrounding the family unit." The evidence showed that, only a few months after the pendente lite change of custody, the children's behavior had already improved because their medications were being regularly controlled, and the trial court could have been convinced that it was in their best interests to more permanently modify custody to ensure their continued progress, with the father acting as their sole physical custodian.

The mother contested the evidence that the father presented and directly disputed most of his contentions, requiring the trial court to assess the credibility of the parties and their witnesses and to weigh the

conflicting evidence. On appeal of a judgment entered in a child-custody case in which a trial court heard ore tenus evidence, the judgment is accorded a presumption of correctness, and we will not reverse the judgment unless the evidence is so lacking that we conclude that the trial court was plainly and palpably wrong or committed an abuse of discretion. Ex parte Bryowsky, 676 So. 2d at 1324 (Ala. 1996). Applying this standard, we do not find any grounds for reversing the judgment entered in case number DR-14-900112.01, and we affirm that judgment.

## II. Appeal Number CL-2023-0619

### A. Supervised Visitation

Although there were some allegations that the mother had physically harmed the father and the children, in the May 1, 2019, order entered in case number DR-14-900112.01, the trial court ordered that the mother was to have unsupervised visitation with the children. On September 14, 2021, based on an allegation that the mother had physically abused the older child during two visits in August and September 2021, the trial court suspended the mother's unsupervised visitation and ordered that further visitations were to be supervised and to take place biweekly. On January 3, 2022, the trial court modified the

14

September 14, 2021, order to reduce the mother's supervised visitation to once a month while the older child attended counseling at The Wellness Center to work toward increased visitation.

On March 18, 2022, the trial court granted the mother's motion to allow the children's guardian ad litem to establish the visitation restrictions and schedule for the mother. The guardian ad litem apparently approved of weekly visitation to be supervised by employees of The Wellness Center. After a supervised visit on April 19, 2022, the father reported that the younger child had accused the mother of improperly touching her. The trial court suspended visitation between the mother and the children pending a forensic interview of the younger child. After an investigation, no criminal charges were made against the mother, and the Chilton County Department of Human Resources found the allegation of sexual abuse to be "not indicated." After a hearing, the trial court entered an order on July 18, 2022, restoring the mother's supervised visitation with the children.

On November 9, 2022, the mother filed a verified motion to request that her visitations be unsupervised. On February 26, 2023, the mother filed a request for a hearing on her motion. Ultimately, the trial court

determined that it would hear the visitation issue during the trial that was scheduled to take place on May 30, 2023. After the May 30, 2023, trial, the trial court entered the final judgment in case number DR-14-900112.02 on July 24, 2023. In that judgment, the trial court continued the mother's supervised visitation, subject to reconsideration following an evaluation by employees of The Wellness Center showing that the mother was not a danger to the children.

The mother contends that the trial court lacked subject-matter jurisdiction to modify her visitation rights because the father failed to pay the appropriate filing fee. See Farmer v. Farmer, 842 So. 2d 679, 680 (Ala. Civ. App. 2002) (holding that the failure to pay the docket fee as required by Ala. Code 1975, § 12-19-70, is a jurisdictional defect). The mother admits that the father paid a filing fee when he filed his contempt petition on June 25, 2020, but she argues that the father was required to pay another filing fee to invoke the jurisdiction of the trial court to modify her visitation. The record shows that the father did not include in his June 25, 2020, petition a claim requesting that the trial court suspend the mother's visitation. On September 13, 2021, the father filed a motion to suspend the mother's visitation. Treating that motion as an

16

amendment to the petition, see Pontius v. State Farm Mut. Auto. Ins. Co., 915 So. 2d 557, 562-63 (Ala. 2005) ("[An appellate court] will look at the substance of a motion, rather than its title, to determine how that motion is to be considered under the Alabama Rules of Civil Procedure."), the father was not required to file an additional filing fee to invoke the jurisdiction of the trial court over his visitation-modification claim. "Under the Alabama Rules of Civil Procedure, the filing of an amended complaint is not the institution of a new action separate and apart from the institution of the initial complaint, requiring the payment of a new filing fee ...." Ex parte Jefferson Smurfit Corp. (U.S.), 951 So. 2d 659, 665 (Ala. 2006).

The mother next contends that the trial court erred in entering the September 14, 2021, and April 28, 2022, pendente lite visitation orders. We cannot consider that argument, however, because the pendente lite orders were eventually supplanted by the final judgment entered on July 24, 2023, awarding the mother supervised visitation. Thus, the propriety of the September 14, 2021, and the April 28, 2022, pendente lite orders is moot. See F.M. v. B.S., 170 So. 3d 663, 668 (Ala. Civ. App. 2014).

17

The mother next contends that the trial court erred in ordering that her visitation with the children be supervised. A trial court may order supervised visitation if it receives sufficient evidence indicating that the restriction is necessary to protect the children from conduct of the noncustodial parent that endangers the children's health, safety, or well-being. See Ex parte Thompson, 51 So. 3d 265, 272 (Ala. 2010). When a trial court does not make specific findings of fact regarding the reasons it imposed a restriction on custody or visitation, the noncustodial parent must file a postjudgment motion to challenge the sufficiency of the evidence. See Batchelor v. Batchelor, 188 So. 3d 704, 707 (Ala. Civ. App. 2015). In this case, the mother did not file a postjudgment motion, and she thereby waived any challenge to the supervised-visitation restriction based on the insufficiency of the evidence. See Pratt v. Pratt, 56 So. 3d 638, 645 (Ala. Civ. App. 2010).

For a similar reason, this court cannot consider the mother's arguments that the trial court improperly delegated its judicial authority over visitation to employees of The Wellness Center and that the visitation provision is not sufficiently detailed. The mother did not raise

those arguments to the trial court, and we cannot consider them for the first time on appeal. See Pratt, supra.

### B. Contempt

In the July 24, 2023, judgment, the trial court found the mother in contempt for failing to pay child support and for "failing to pay medicals and non-covered medical expenses, [for] keeping [the COVID-19 stimulus funds] while [the] children [were] in [the] father[']s custody, [for] placing [the] children on government insurance while [the] father ha[d] [the] children covered on BC/BS...."[1] The mother contends that she could not be held in contempt for those actions or omissions because the trial court had not entered any order addressing those subjects. Under Rule 70A, Ala. R. Civ. P., a party can be held in civil contempt only for willfully violating a lawful order of reasonable specificity. See Nave v. Nave, 942 So. 2d 372, 377 (Ala. Civ. App. 2005). She also contends that the trial court erred in ordering her to pay the father the COVID-19 stimulus

---

[1]The mother asserts that the trial court also found her in contempt for claiming the children as dependents on her income-tax returns and in applying for food stamps in the name of the children, but, on a close reading of the judgment, we conclude that the trial court did not base its contempt finding on those grounds, although it did prohibit her from engaging in such conduct in the future.

funds that she had retained and in requiring her to pay attorney's fees as a sanction for her contempt. Once again, however, the mother did not raise any of those arguments to the trial court, and we cannot consider them for the first time on appeal. See <u>Andrews v. Merritt Oil Co.</u>, 612 So. 2d at 410.

## C. Attorney's Fees

Finally, the mother requests attorney's fees for the allegedly oppressive conduct committed by the father during the underlying litigation, specifically his alleged false allegation of sexual abuse. The trial court denied the mother's claim for attorney's fees in the proceedings below, and the mother makes no legal argument as to why the trial court erred by refusing to order the father to pay her attorney's fees on account of his alleged misconduct. <u>See</u> Rule 28, Ala. R. App. P. The mother does assert that a trial court can consider the superior financial condition of a party when assessing attorney's fees in a domestic-relations case, but the assertion of a general proposition of law is not sufficient to command reversal of a judgment. <u>Ezell v. Ezell</u>, 394 So. 3d 608, 612 (Ala. Civ. App. 2024).

<u>Conclusion</u>

For the foregoing reasons, we affirm the judgment entered in case number DR-14-900112.01; we also affirm the judgment entered in case number DR-14-900112.02.

CL-2023-0485 -- AFFIRMED.

CL-2023-0619 -- AFFIRMED.

Moore, P.J., and Edwards and Hanson, JJ., concur.

Lewis, J., recuses himself.