20 So.2d 224

### SULLIVAN v. ALABAMA POWER CO.

6 Div. 244.

Supreme Court of Alabama.

Nov. 24, 1944.

Rehearing Denied Jan. 11, 1945.

Harsh & Here, of Birmingham, for appellant.

Ross, Ross & Ross, of Bessemer, and Martin, Turner & McWhorter, of Birmingham, for appellee.

death was without the range of any rationally possible consequences of the described negligence, therefore not the proximate cause of death.

John Sullivan, husband of plaintiff, was killed instantly in his back yard while attempting to disengage, with an iron pipe, his children's parachute from the 6900-volt power line of defendant which traversed his premises. The wire was uninsulated and at one point was within about ten feet of a part of the house and at the point of accident was about .30 feet from the west side of the house and at a vertical elevation of 20 feet and five inches from the ground. One witness also pointed out that its elevation was about three feet lower "right next to the house." There was evidence that the pipe never touched the wire but that the current from the uninsulated wire arced and made contact when the pipe was several inches from the wire. No warning signs were maintained anywhere. The property, Sullivan's home, consisted of about five acres. It was one of the homesteads in Greenwood Homestead Project, a Farm Security Administration venture for small farm homes, which contemplated farming on the premises. Beyond the point of accident from the house was the farm part of the property where deceased had had his garden and hay field and from whence hay wagons had at times hauled hay from the field, and in so doing traversed the way under the line to the road. Suspended on the same poles from cross-arms and about six feet below this primary wire were two small voltage wires and about a foot above these a neutral wire was suspended from the poles. Near where the driveway passed under the line a telephone wire was also strung on the poles between the high-voltage wire and the lower wires.

The damnifying act claimed by plaintiff is the maintenance of this uninsulated line in dangerous proximity to the surface of the land occupied by plaintiff as his home, without any warning of its deadly nature.

We must review the propriety of the trial court's ruling that defendant was entitled to a directed verdict. Decisions of such questions are always difficult. But we are convinced here that the issue of the defendant's negligence, vel non, under the proven facts, should have been committed to the jury's determination.

The rule is axiomatic and is only restated for emphasis. The entire evidence

**SIMPSON, Justice.**

The appeal challenges the correctness of an order granting a new trial grounded upon failure to direct a verdict for defendant. The trial court so ruled because of his conclusions that (1) no negligence was proven and (2) if proven, the intestate's

must be viewed in its most favorable aspect for the adverse party and where, from it, a reasonable inference may be drawn adverse to the party requesting it, the affirmative charge is improper. Or here, if from the evidence reasonable inference may be drawn substantiating the claimed culpability of the defendant, a directed verdict for defendant is improper.

■ Under this governing principle we cannot affirm as correct the withdrawal from the jury of the decision of negligence. The deceased met his death in his own back yard where he and his children and family had a right to live, play, recreate, engage in farming and transact all those normal, customary, domestic affairs which inhere in and around a proper American home of the kind here described. The defendant of course was chargeable with notice of this and with the duty of exercising due care in maintaining the line in accordance with good electrical practice to render it reasonably safe to those rightfully in its vicinity.

The rule of care required in the maintenance of such transmission wire has been thus stated: "Not only is the current deadly, but the ordinary person has no means of knowing whether any particular wire is carrying a deadly current or is harmless. Therefore, one who attempts to make use of such appliances is bound to see that no injury comes to persons rightfully in proximity to them and who are themselves guilty of no wrong." 14 A.L.R., note, page 1023.

■ Our courts are also committed to the doctrine that "the duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith." (Unless, of course, so placed as to exclude the reasonable possibility of contact.) Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979, 982.

■ The principle is also declared that it is negligence to maintain an uninsulated highly charged wire, without any warning of the danger, in any place where persons may reasonably be expected to come in contact with it. Oil Belt Power Co. v. Touchstone, Tex.Civ.App., 266 S.W. 432, 439; Southwestern Gas & Electric Co. v. Hutchins, Tex.Civ.App., 68 S.W.2d 1085, 1087; Erikson v. Wisconsin Hydro-Electric Co., 214 Wis. 614, 254 N.W. 106.

■ Two witnesses of experience in such matters testified that the maintenance of this line in its uninsulated condition and under the described circumstances was not in keeping with good electrical practice from the standpoint of safety. In fact, we draw a substantial inference from the testimony of some witnesses that, near the house and as it crossed the premises, the line elevation from the ground was below the minimum requirements of the National Electric Safety Code approved by the Federal Bureau of Standards, which alone presented a question of negligence. Alabama Power Co. v. McIntosh, 219 Ala. 546, 122 So. 677; City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 122 A.L.R. 637.

Viewing the whole evidence in the light of the cited authorities, we must and do hold that on the issue of negligence a conflict was presented necessitating solution by the jury.

■ The next phase of the case dealing with proximate cause is a more difficult problem. Was the evidence bearing upon the question of defendant's negligence as the proximate cause of the injury complained of *entirely free of doubt or adverse inference?* If not, then this issue likewise must be submitted to the jury for decision, under appropriate instructions by the court. Briggs v. Birmingham Ry., Light & Power Co., 188 Ala. 262, 269, 66 So. 95.

■ The particular principle of proximate cause here pertinent to defendant's liability is: That a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind. Armstrong, Adm'x v. Montgomery St. Ry. Co., 123 Ala. 233, 249, 250, 26 So. 349; Briggs v. Birmingham Ry., Light & Power Co., 188 Ala. 262, 269, 66 So. 95.

■ It is not necessary that the defendant should anticipate the injury in the precise form as resulted. Nor need the particular consequences have been within the contemplation of the parties. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So.

625, 63 A.L.R. 1; 25 C.J.S., Damages, § 25, pp. 487, 488; 17 C.J. p. 751, § 82.

■ In line with our decisions on this subject is the statement: "As regards proximate cause * * * the courts look more for the possibility of a hazard of some form to some person than for the expectation of the particular chance that happened. Accordingly, it is not necessary to a defendant's liability, after his negligence has been established, to show, in addition thereto, that the particular consequences of his negligence could have been foreseen by him; it is sufficient that the injuries are the natural, although not the necessary and inevitable, result of the negligent fault—such injuries as are likely, in ordinary circumstances, to ensue from the act or omission in question." 38 Am. Jur., § 62, p. 714.

■ Our recent case of Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 566, 14 So.2d 527, otherwise states the applicable rule as follows: If common experience has demonstrated that dangers lurk in the method adopted or in the instrumentality maintained by a person he rests under the obligation of ascertaining the peril and taking precautions to avoid injury therefrom.

■ And, ordinarily, culpability for dereliction in this regard is a jury question, determinable under the particular circumstances. Briggs case, supra, 188 Ala. at page 270, 66 So. at page 97.

■ Under the proven facts, and the reasonable inferences arising therefrom, our conclusion is that intestate's death was within the reasonably anticipatable consequences of the negligence charged, necessitating submitting the issue of proximate causation to the jury. At least, the evidence on the question was not free of all doubt or adverse inference—which is the test—as to authorize withdrawal of solution from the jury.

There are several circumstances to sustain the view that the power line proprietor was not entirely acquitted under the law of foreseeing danger of contact from the ground by persons rightfully using Sullivan's back yard. The minimum requirements charted in the National Electric Safety Code, by their very publication, carry the implication that human beings' liability to danger is not limited to exclusive ground activities. These minimum requirements contemplate that persons standing on the ground might subject themselves to contact at heights above their normal reach. It seems to us that decedent's back yard (here, part of a small farm), with the manifold uses to which it would normally be subjected, should have called to the mind of the proprietor that there may be occasions when an uninsulated wire in this condition might be contacted by persons unaware of its danger in the normal activities of domesticity. It is our view that it should have been foreseen that the Sullivans might frequently use their back yard and the property adjacent to their home for many purposes involving operations which would likely cause contact with a wire of the elevation here. One justifiable inference—in fact proven—is that loaded hay wagons (and of course, inferably other farm vehicles and implements) came out of the field in the rear of the house and over the way under the line. Certainly it cannot be said to be beyond the scope of rationally foreseeable consequences that a person atop a loaded hay wagon might establish contact with the power line. The very presence of the iron pipe, the 20-foot lethal conductor, was due to a contemplated installation of a yard hydrant—a not improbable domestic activity which might involve contact with the wire. Many other circumstances of normal use of the premises such as a child, with no knowledge of the likely danger, making contact with the line, or a workman on the part of the house in close proximity to the line, unaware of its high voltage, might be recounted as foreseeable consequences.

A California case bearing similarity to the one at bar on the question of proximate cause is Howell v. San Joaquin Light & Power Corporation, 87 Cal.App. 44, 261 P. 1107. There a workman in a field, in taking up a 20-foot section of a pipe line, raised it on end and made contact with a highly charged electric line having a ground elevation of 19 feet and 3 inches. On the subject of reasonably foreseeable consequences the court stated: "The question of maintaining an uninsulated wire so close to the ground over agricultural lands where farmers, workmen, dairymen, and others who might lawfully go there and the agricultural implements which they might use, including water pipe and other instrumentalities which the farmers of that section were accustomed to use and employ and where contact with the unpro-

tected wire might readily be made, presented a question of fact as to the negligence of the defendant, to be submitted to the jury." At pages 1111, 1112 of 261 P.

Another case illustrative of the same principle is Card v. Wenatchee Valley Gas & Electric Co., 77 Wash. 564, 137 P. 1047; 14 A.L.R. 1031, where a workman on an irrigation canal touched the electric line with a pipe he was removing. The court there observed: "It seems to us, in view of the deadly character of this powerful current, the high degree of care required of appellant in its maintenance, and the fact that it was suspended over the land of deceased at the height of 17 feet, the jury might well conclude that appellant was bound to anticipate occurrences of the nature here involved." 137 P. at page 1049.

The authorities relied on by appellee to sustain the adverse contention are distinguishable from the instant case. Without burdening the opinion with a detailed discussion, it may be pointed out that in some of the cited cases the place of injury was at a remote and inaccessible place, as where "it was not open to the jury to find that there was any such customary resort of people in general or children" (Sheffield Co. v. Morton, 161 Ala. 153, 49 So. 772, 776); or the negligence dealt with related to the unproven breach of duty "to discover, and to guard, or to remove, the condition thus created by the presence of the foreign wire." (Golson case, 205 Ala. 226, 87 So. 439, 441); or the accident was so extraordinary as not to require anticipation thereof by the defendant (Alabama Power Co. v. Cooper, 229 Ala. 318, 156 So. 854); or the review was upon the sufficiency of the complaint where all intendments are resolved against the pleader. Littleton v. Alabama Power Co., 243 Ala. 492, 10 So.2d 757.

It is also the view of the court that the issue of contributory negligence was likewise for the jury. The burden was on the defendant to prove the plea. There was no evidence that deceased had any knowledge of the deadly character of the line amid the network of other wires in such close proximity to his home and without any warning of its dangerous nature. Then too, there was evidence that the pipe never touched the wire, and to hold as a matter of law that he was guilty of contributory negligence would be to reach the illogical and unproven conclusion that he knew, or should have known, not only the wire was one of dangerous voltage and uninsulated, but also that the current would likely bridge the space between pipe and wire. Many conflicting inferences arise, under the issue of contributory negligence, which require determination by the jury.

This appeal, however, is to review the propriety of the action of the trial court in granting a new trial and the inquiry is not limited to the grounds on which the motion was granted. Louisville & N. R. Co. v. Scott, 232 Ala. 284, 290 (20), 167 So. 572. The action of the trial court is sustainable if there was any proper ground in the motion, regardless of whether the ruling may have been rested on an improper ground. Mills Lumber Co. v. Hull, 222 Ala. 229, 131 So. 902. And it is open to appellee to show error in any other of the several grounds assigned in the motion. Thomas v. Carter, 218 Ala. 55, 59(7), 117 So. 634.

We therefore give consideration to the remaining grounds of the motion, asserted as error upon which to base an affirmance of the judgment granting the new trial.

Among such grounds were those challenging the admissibility of the testimony of plaintiff's witness Chesser that prior to the accident the witness had made complaints to Scott and Parker, two of defendant's "service men," regarding the uninsulated condition of the wire, its "shoddy construction," and that he had requested that the defects be remedied and the line made safer. Appellee seeks to affirm the judgment ordering the new trial for the claimed erroneous admission of this testimony. We are in agreement with this contention. In the form presented the evidence was not admissible. The description of Scott and Parker as "service men" is but a mere conclusion and in no way depicts the duties of their employment. At least, the fact that they were described by the witness as "service men" neither establishes that at the time of the alleged complaints they were then engaged under authority of the appellee nor that the complaints related to the matters which they were engaged to transact for the company.

The rule of imputed notice is bifurcate in Alabama. As a general proposition of law, in order for knowledge

of an agent to bind the principal, it must be shown that the agent acquired such notice or knowledge while acting within the line and scope of his duty and authority (Bank of Florala v. American Nat. Bank, 199 Ala. 659, 75 So. 310) and that it related to the very matter coming within his authority. Cooper & Sons Motor Co. v. Klepsig, 223 Ala. 2, 135 So. 430; Dallas Mfg. Co. v. Townes, 148 Ala. 146, 41 So. 988; Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So.. 180(6); Birmingham Ry., Light & Power Co. v. Murphy, 2 Ala.App. 588, 56 So. 817; 3 C.J.S., Agency, § 264, p. 197. Information to an agent is not notice to the principal when given to the agent upon a casual occasion at a time when he is not engaged in business for his principal and no act or transaction of the agency is then pending. Patterson v. Irvin, 142 Ala. 401, 38 So. 121. A precise statement of the rule by this court is: "An agent's notice or knowledge is not notice to his principal unless it is with respect to the very matter which the agent is employed to transact for the principal, and unless it comes to him while so engaged." Alabama Western R. Co. v. Bush, 182 Ala. 113, 121, 62 So. 89, 90. Further references are available in Thompson on Corporations, Vol. 3, § 1757 et seq.; 2 Mecham on Agency, § 1831; Congar v. Chicago & N. W. R. Co., 24 Wis. 157, 1 Am.Rep. 164; Cook v. City of Anamosa, 66 Iowa 427, 23 N.W. 907; Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808.

The foregoing authorities expound the general principle and relate to *constructive* notice to the principal through actual notice to the agent while acting for the principal, in which event the principal is conclusively bound by it. This is said to be a rule of substantive law and where notice is thus acquired it is indisputable. Hall & Brown Woodworking Mach. Co. v. Haley, etc., Co., 174 Ala. 190, 202, 56 So. 726, L.R.A.1918B, 924; Williams v. Fundaburk, 237 Ala. 30, 185 So. 383.

In addition to this rule of (indisputable) *constructive* notice, one of substantive law, our courts recognize another, one of evidence, of (disputable) *"implied actual* notice." Hall case, 174 Ala. at page 203, 56 So. at page 730, L.R.A.1918B, 924. Under this latter rule it is held that, with respect to matters within his agency, actual knowledge or notice acquired by the agent, though not then acting for his principal, may still support a finding that the

principal had notice, due to a presumption when not disproved that the agent did his duty and reported the matter to his principal. Williams v. Fundaburk, supra; Blount County Bank v. Harris, 200 Ala. 669, 77 So. 43; Hall case, supra.' This rule is elucidated in the Hall case, to wit: "The actual knowledge of the principal, when material, may be proved like any other fact. It is the duty of an agent to inform his principal of every material fact within his knowledge, no matter when acquired, *bearing upon the subject-matter of his agency,* which may affect the interests of his principal with respect thereto; and it will be presumed that he has discharged this duty. * * * But this presumption like others of a similar nature, is disputable, and not conclusive." (Our emphasis.)

The application of these principles to the testimony noted clearly exemplifies its inadmissibility under either phase of the rule and operates to affirm the appellee's contention for error in its allowance. The proof, to sustain its introduction, falls far short of a showing that when the complaints were made the service men were either then acting for their principal or that the matters communicated to them related to that which they were employed to transact. To admit said testimony as thus presented was therefore error.

That evidence of the character given by the witness Chesser could be used to damaging effect in aggrandizing the recovery is as equally manifest. The suit was under the homicide act authorizing damages, punitive in nature; and, as directed by the trial court in the general oral charge, if the jury should find for the plaintiff in the case, they were authorized to "award the plaintiff such damages as in your (their) sound discretion *would properly punish the defendant for the negligence charged and proved* upon the trial of this cause." Undoubtedly, the more abundant the proof of the defendant's contended derelictions and the more frequent the complaints of the dangerous instrumentality there maintained proved against it, the greater might be its culpability for punishment and hence the likelihood of more greatly affecting the jury in its consideration of the amount of damages to be awarded as punishment. And this would be true, whether the district manager, on a different occasion, was "talked to" or not. That the admitted testimony was under serious consideration by the jury and bound to have affected their

decision is evidenced by the recall of the witness Chesser *at the jury's request*, for the purpose of repeating his testimony.

The only other insistence of appellee necessary to consider is the contention that Counts One and Two upon which recovery was rested were defective. The discussion of the rules of negligence hereinabove should suffice to sustain the conclusion that the Counts were impervious to the asserted demurrers. Count One rested for recovery upon the culpability of defendant in negligently maintaining an uninsulated wire of high potential in dangerous proximity to the ground on deceased's premises where he had a right to be, proximating in the electrocution of plaintiff's intestate. Count Two, substantially similar, contains the added averment of failure to give warning of the dangerous condition and knowledge of defendant that deceased and his family habitually and rightfully resorted to the scene of accident. We regard both Counts as sufficiently charging negligence to meet the rules of good pleading.

For the erroneous allowance of the testimony of witness Chesser in the form presented, with its patently prejudicial character, we have reached the conclusion that an affirmance of the judgment granting a new trial is proper.

Affirmed.

BROWN, FOSTER, and STAKELY, JJ., concur.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur in part and in part dissent.

GARDNER, Chief Justice (dissenting in part).

I am in accord with the majority of the Court upon the question of the ruling on the affirmative charge. This was the sole question upon which the trial judge granted a new trial. All the Justices are in accord that the case was one for the consideration of the jury, and the affirmative charge properly refused.

But I am unable to agree reversible error appears upon the question of evidence treated in the opinion. Properly interpreted, the record discloses that notice of the condition of this wire was given to the district manager of defendant by the same witness (Chesser) who testifies that he talked to the service men. Conceding, with-out deciding, lack of technical accuracy in the proof as to the scope and line of the authority of such service men, I am unable to say this proof did probably injuriously affect defendant's substantial rights, particularly in view of the proof as to notice to the district manager. A new trial, in my opinion, should not be rested upon this question of evidence, and the conclusion follows that the judgment for plaintiff should be here reinstated.

In these views Justice LIVINGSTON concurs.

Justice THOMAS is of the opinion all the evidence was admissible, and dissents upon this ground.