**William J. MAXWELL, Plaintiff-Appellee,**

v.

**SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE et al., Defendants-Appellants.**

**No. 26612.**

United States Court of Appeals
Fifth Circuit.

Sept. 2, 1969.

Peter A. Hall, Birmingham, Ala., Charles Stephen Ralston, San Francisco, Cal., Norman C. Amaker, James M. Nabrit, III, Jack Greenberg, New York City, for defendants-appellants.

Jerry O. Lorant, John Kopelousos, Lorant, Bouloukos & Kopelousos, Birmingham, Ala., for plaintiff-appellee.

Before BELL and THORNBERRY, Circuit Judges, and CHOATE, Senior District Judge.

CHOATE, Senior District Judge:

The appellant, defendant below, is a corporation that actively promotes what it considers to be the best interests of Negro citizens. This diversity case arose through a chain of events that began with "peaceful" demonstration and ended with a gunshot wound to an observer, plaintiff below and appellee herein. Plaintiff, proceeding on alternative theories of negligence and "nuisance",[1] maintained that defendant, through its agents, was legally responsible for his injuries. The jury found for the plaintiff and awarded him $45,000.[2] Defendant's motions for directed verdict and judgment notwithstanding the verdict were denied. On a close question of proximate causation, we reverse.

In February of 1966 the Liberty Supermarket, located in a predominately Negro section of Birmingham, Alabama, was the subject of demonstrations and picketing.[3] Beginning as an essentially local affair, SCLC agents soon became actively involved.[4] Defendant's agents had made speeches to encourage the demonstrations and were participating when the shooting occurred.

On the night of the shooting incident, 700 people had gathered at a nearby church. After hearing speeches the crowd marched toward the Liberty Supermarket where picketing was already in progress. As the marchers neared the market, a white male was leaving the parking lot of the market in his car. He could not immediately enter the street, however, because of cars continuously circling the block. A group of marchers and picketers began "hollering" at the driver,[5] and ultimately between 100 and 200 marchers and picketers converged on the car and began to rock it back and forth. At this point the driver of the car fired several pistol shots from his car. The crowd momentarily fell back but

---

1. No authority has been cited to this Court that would indicate that nuisance is applicable to the case at bar and we confine our consideration to the other issues presented.

2. Upon a remittitur by plaintiff, judgment was entered for $41,000.

3. The demonstrations were apparently triggered by an incident that had occurred at the market between Negro customers and a store policeman. In the course of things, the demonstrators also complained of alleged discriminatory employment practices by the market.

4. We are, of course, viewing the evidence in a light most favorable to plaintiff.

5. Some of the participants were heard to have said, "Get him, Get him."

again attacked the car. A second volley was fired and the driver turned into the street and left the area.[6]

Plaintiff had been *observing* the demonstration from his car for some five or ten minutes prior to the shooting incident. After hearing the first round of shots, plaintiff apparently thought the shooting was over and stepped out of his car. He was struck by a bullet from the second volley.

■ The appellant, by brief, states that "this case raises an important and significant issue—whether an organization can be subjected to onerous legal judgments on no more basis than its continuing efforts, protected by the constitutional guarantees of freedom of speech and assembly, to achieve racial justice." This is most certainly *not* an issue in this case. If there is liability under a proper application of sound tort principles, the stated objectives of the defendant, whatever they may be, will be of no consequence. The First Amendment is simply not involved in this case.

Passing over the factual arguments asserted regarding the appellant's vulnerability to liability for negligence on the basis of agency, it is clear that the ultimate issue is one of proximate cause. For this we turn, as we must, to Alabama law.

The Alabama Supreme Court's most recent statement of its view of proximate causation is found in Aggregate Limestone Co. v. Robison, 276 Ala. 338, 161 So.2d 820 (1964):

> The fact that the injury "results" from the negligence is not sufficient to satisfy the requirements of negligence law. The injury has to "proximately result" from the negligence act or omission. The word "proximate" adds that requirement of unbroken causation to the other requirements necessary for actionable negligence. Proximate cause involves consideration of active force, or result of active force on passive force, or of several active

forces on each other. * * * "Proximate" means next in relation to cause and effect, and, together with the word "remote", is used to distinguish between actionable and non-actionable negligence. * * * "Proximate cause" is not necessarily the act nearest injury, but is an act which actively aided in producing injury as a direct and existing cause. 161 So.2d at 822.

Where there are two or more causes of injury, "the law will consider only the proximate cause and not a remote cause * * *." Morgan v. City of Tuscaloosa, 268 Ala. 493, 108 So.2d 342, 344 (1959). "[W]here a prior cause merely created the condition or gives rise to the occasion and after the condition has been created an intervening agency produced the injury, the first is not the proximate cause." *Morgan,* supra, at pg. 345.

Of course it is an incomplete answer to say, as appellant would have it, that "mere" advocacy of and participation in a "peaceful" demonstration could not result in legal liability for resulting harm to persons or property. Here, emotions were charged, there were recent incidents with racial overtones, and there was a potentially if not probably unmanageable number of participants. It may indeed be negligent to foster a "peaceful" demonstration in those circumstances, or at least to do so without proper safeguards, when it is reasonably foreseeable that harm to persons or property might result. Nevertheless, the controlling question in this case, and the one upon which we rest our decision, is whether the *particular* harm that occurred in *this* case was the proximate result of that type of negligence.

■ Crediting plaintiff's view of the evidence regarding defendant's participation in the demonstration, the most that can be said on the record before us is that defendant, by act or omission, negligently created a condition that might foreseeably result in injury. There was no evidence to indicate that

**1068**

violence was overtly advocated or that defendant's agents actually participated in the violence that occurred. But upon creation of the condition, it cannot be said that the ensuing injury to plaintiff was the result of "an act which *actively* aided in producing injury as a *direct* and *existing* cause." (Emphasis supplied) Aggregate Limestone Co. v. Robison, supra. The car was attacked in an apparently spontaneous outburst, the driver, angered and excited, responded by the possibly criminal act of firing pistol shots into the crowd, and the plaintiff, in apparent disregard for his own safety, placed himself in a position of peril. Thus, while it is true that the defendant need not foresee the particular consequences of his negligence, Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So. 2d 224 (1944), we must hold that, on these facts, the condition was a remote cause and not a proximate cause of plaintiff's injuries. See Aggregate Limestone Co. v. Robison, supra; Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 130 So.2d 388 (1961); Mahone v. Birmingham Electric Co., 261 Ala., 132, 73 So.2d 378 (1954); and Louisville & N. R. Co. v. Maddox, 236 Ala. 594, 183 So. 849, 118 A.L.R. 1318 (1938).

Plaintiff's most compelling argument rests on the principle, recognized in Alabama, that an intervening criminal act of a third person will not necessarily immunize the defendant from liability if such act was reasonably foreseeable. Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696, 61 A.L.R.2d 1346 (1957). In the present case, it might be said that defendant could have reasonably foreseen that some form of violent conduct might occur, even though the demonstration was ostensibly to be peaceful. But we are not prepared to say that the ensuing chain of events, including the actions of the plaintiff,[7] were of a type that it could be known by common experience would follow. See Morgan v. City of Tuscaloosa, 108 So.2d at 345.

The operative facts in the chain of events leading up to plaintiff's injury are uncontradicted. "When the facts are such that reasonable men must draw the same conclusion, the question of proximate cause is one of law for the courts." Morgan v. City of Tuscaloosa, supra, at 345. Upon careful consideration we conclude that the acts of defendant were not a proximate cause of plaintiff's injury under the authorities cited. The judgment is vacated with directions to enter judgment for the defendant.

---

7. While plaintiff's actions may not have been such to hold, as a matter of law, that he assumed the risk, his conduct is a factor regarding the issue of causation.