BEATTY, Justice.
Appeal by plaintiffs, John R. Wilson and Linda Wilson, from a summary judgment rendered for the defendant, Alabama Power Company (“APCo”), in plaintiffs’ action to recover damages for personal injuries and loss of consortium, allegedly due to defendant’s negligence and wanton conduct. We reverse and remand.
*106 On the date of his injury, plaintiff John R. Wilson was engaged in his employment as a telephone lineman with South Central Bell Telephone Company (“Bell”). Equipped with spiked climbers, he had climbed a telephone pole to a height of approximately 22 feet when his climbers lost their grip on the pole and he slid down the pole to the ground. He suffered a severe fracture of the distal tibia and fibula, an injury of the ankle and lower leg.
The pole Wilson had climbed was owned by Bell. At the base of that pole was a galvanized steel ground rod approximately eight feet in length. The ground rod was owned by, and had been installed by, the defendant, APCo, and at the time of this occurrence it was protruding approximately two inches above the surface of the ground.
Plaintiffs initiated this action, claiming, among other things, that APCo had negligently or wantonly failed to drive the ground rod below the surface of the ground, or to warn of the danger posed by the extension of the ground rod above the ground, proximately resulting in injuries, etc.
APCo’s motion to dismiss was overruled; its answer subsequently filed contained general and specific denials and alleged contributory negligence, assumption of risk, and intervening negligence of a third party. After discovery, and on the day set for trial, APCo filed its motion in limine, the purpose of which was to prevent the plaintiffs’ introduction of evidence of a certain APCo regulation requiring that its ground rods be driven below ground. The trial court continued the case to afford additional time for the development of the proximate cause issue.
APCo subsequently moved for summary judgment. A hearing on this motion was held, the plaintiffs arguing that the deposition of Dr. Frederick N. Meyer provided the link of causation sufficient to defeat summary judgment. The trial court disagreed and entered summary judgment for APCo. This appeal followed.
The question presented is whether summary judgment was properly entered. The answer to this question lies in the presence or absence of some evidence of proximate cause.
As succinctly stated in Marshall County v. Uptain, 409 So.2d 423, 426 (Ala.1981):
“ ‘The proximate cause of an injury is the primary moving cause without which it would not have occurred, but which, in the natural and probable sequence of events, produces .the injury.’ City of Mobile v. Havard, 289 Ala. 532, 268 So.2d 805 (1972), appeal after remand, Havard v. Palmer & Baker Engineers, Inc., 293 Ala. 301, 302 So.2d 228 (1974). Negligence need not be the sole cause of injury in order to hold the negligent person liable. It is sufficient that his or her negligence, ‘concurring with one or more efficient causes, ... is the proximate cause of the injury.’ Lawson v. General Telephone Co. of Alabama, 289 Ala. 283, 267 So.2d 132 (1972) (quoting Shepard v. Gardner Wholesale, Inc., 288 Ala. 43, 256 So.2d 877 (1972), and Chambers v. Cox, 222 Ala. 1, 130 So. 416 (1930)). When the concurring cause is another person’s negligence which might reasonably be anticipated or foreseen, the original act of negligence may be regarded as the proximate cause of the injury which results. See Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224 (1944); Goodwyn v. Gibson, 235 Ala. 19, 177 So. 140 (1937); Clendenon v. Yarbrough, 233 Ala. 269, 171 So. 277 (1936).”
Indeed, in Uptain, supra, this Court found that proximate cause could have existed in a county’s failure to re-erect a roadway stop sign two years before a vehicular accident in which the vehicle, its driver therefore not warned, entered an intersection and struck another automobile. This Court, at 426, upheld a jury’s finding that the county’s negligence was the proximate cause of the resulting injury:
“Clearly from the facts of this case, a jury could find that Marshall County breached a duty in failing to maintain the stop sign. It was foreseeable that as a result of this negligence, a car might travel through the intersection without stopping and as a result, [cause] an inju *107 ry from an automobile accident. Thus, it was not error for the trial judge to refuse to instruct the jury that if Judy Kaylor was negligent in any degree, Marshall County could not be liable.”
Moreover, this Court has stated, in Sullivan v. Alabama Power Co., 246 Ala. 262, 268, 20 So.2d 224 (1944):
“It is not necessary that the defendant should anticipate the injury in the precise form as resulted. Nor need the particular consequences have been within the contemplation of the parties. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R. 1; 25 C.J.S., Damages, § 25, pp. 487, 488; 17 C.J. p. 751, § 82.
“In line with our decisions on this subject is the statement: ‘As regards proximate cause * * * the courts look more for the possibility of a hazard of some form to some person than for the expectation of the particular chance that happened. Accordingly, it is not necessary to a defendant’s liability, after his negligence has been established, to show, in addition thereto, that the particular consequences of his negligence could have been foreseen by him; it is sufficient that the injuries are the natural, although not the necessary and inevitable, result of the negligent fault — such injuries as are likely, in ordinary circumstances, to ensue from the act or omission in question.’ ...”
Plaintiffs direct us to the deposition of Dr. Frederick N. Meyer for the requisite causal connection between the placement of the ground rod and John Wilson’s injury. Dr. Meyer, an orthopedic surgeon at the University of South Alabama Medical Center, who had examined and treated Mr. Wilson, testified as follows:
“Q. Dr. Meyer, by way of background, the testimony in this case is that Mr. Wilson was working as a telephone lineman, was on a telephone pole at a height of approximately twenty feet, eighteen to twenty feet, that by whatever means his feet became dislodged from the pole, [and he] fell, landpng] on the ground at the base of the pole. His testimony is that his left foot struck a metal ground rod which was driven into the ground on the left side of that pole and protruded approximately two inches above the ground.
“I brought with me the climber that he was wearing which was strapped to that foot as well as the boot he was wearing at the time and I would ask you to take a look at those, if-you would, please, sir.
“A. Okay.
“Q. As to the boot, it’s Mr. Wilson’s representation that the mark there on the front of the boot is where he believes he struck the ground rod.
“A. Okay. I assume that this thing probably fits under there like this.
“Q. Yes, sir. The front of the boot fits in there and then the strap goes around it and the upper part of the climber straps to the upper calf below the knee.
“A. Okay.
“Q. With that hypothetical background about how the incident occurred and the medical reports, X-rays, operative report and so forth, have you been able to form an opinion as to what part, if any, you believe this ground rod or striking the ground rod would have played in the fracture to his ankle?
“MR. MANTIPLY: Object to the form of the question.
“A. Well, what he has — and if I can elaborate for a minute — is what’s referred to as a pile-on fracture which is medicalese for a fracture through the — where the talus of the ankle or the ankle bone itself is driven through the distal end of the tibia basically exploding it and crushing it. Okay? This is an axial load type of an injury and most ankle injuries are twisting type of injuries, et cetera. When you see this type of injury, it’s usually an axial load.
“Q. What does that mean, Doctor?
“A. It means basically what I stated earlier, that the talus and the foot are basically driven through the ankle. The type of injury that you tend to see this in is in automobile accidents, high speed automobile accidents where [a person’s] foot is on the brake pedal or, you know, you can *108 see it in airplane crashes where people’s feet are on the rudder pedals, et cetera. And I think in general what you’re talking about is a fairly significant amount of force concentrated over a fairly small area.
“Now, all that wordiness means is I think that his hitting the rod — there’s a good chance that his hitting the rod could have done this to him.
“Q. If he came down in such a manner that he landed on both feet, the right foot is uninjured, the left foot which ... struck the rod is fractured, does that aid any in your reaching your determination?
“MR. MANTIPLY: Object to the form.
“A. Yes, it does.
“Q. How so?
“A. Well, I think again, you know — and I hate to be hypothetical or vague but you have to assume that he hit with both feet with equal force. If he hit with the left foot first, that might have broken his fall than if he hit with the right foot [sic]. But assuming particularly that he hit with equal force, the fact that the force was spread over the left — or the right foot which was uninjured, would, you know, dissipate the force better than, say, concentrated in a small area on the left foot.
“Q. Understanding that you’re looking at all of this in hindsight obviously, based on the hypothetical explanation as to how this occurred plus all the medical reports and findings and so forth, would you say it is more likely than not that this rod played a causative factor in his fracture?
“MR. MANTIPLY: Object to the form.
“A. Okay. Let me answer that — let’s start with a question. What was the ground like around the rod? I mean was it concrete; was it—
“Q. It was a residential area and it was—
“A. Lawn?
“Q. —dirt, dirt and grass.
“A. Okay. I suspect that it was probably his impact on the rod that did it.
“[And on cross-examination:]
“Q. Is your opinion based upon the assumption that Mr. Wilson’s left foot struck the ground first and took the brunt of the impact?
“A. No.
“Q. What are you assuming in your opinion with regard to which foot struck first?
“A. I’m assuming that they both struck equally.
“Q. What are you assuming with regard to what portion of each foot struck first; that is, ball as opposed to heel, toe as opposed to heel, inside edge as opposed to left side edge?
“A. I’m not making any assumption based on that. This type of injury is usually an axial load type of injury and the force is driven up through the foot. Based on a post reduction film like this, I couldn’t tell you how the ankle was displaced; I could just tell you what the mechanism of the injury is which is usually some sort of a vertical load driving — where the foot is driven up through the end of the tibia.
“Now, how that happens, it can — the heel can hit first; the toe can hit first. As I say, you know, a lot of times we’ll see it sort of snapped over a pedal like a brake pedal[,] on an airplane[,] or something like that. But which way the ankle was displaced would tell more of which side was hit first. But, you know, this is basically an axial load injury and, as to what part of the foot hit first, I can’t tell you based on this X-ray.
“Q. Well, in your opinion would you expect the same type injury as you see in the X-rays if the heel hit first as opposed to the ball of the foot?
“A. You could get the same type of injury, yes. Now, how much is displaced? If the ball hit first, I would expect to see the ankle displaced more posteriorly with more posterior fragments knocked off. If the heel hit first, you might see it driven straight up. Okay?
“These are post reduction films. I don’t have any of the original films on the injury, you know, whether it was driven posteriorly. If the thing snapped over a brake *109 pedal, you tend to see a displacement more anteriorly and just which way it’s displaced depends on what hit first.
“You’re correct in that assumption but the vertical rod effect — you know, basically you’re talking vector analysis, which I realize is kind of confusing to the jury, but forces have direction and they have strength or force. And when the force is applied, it’s applied both, you know, with a certain amount of strength and also in a certain direction. And which way the thing displaces and whether it displaces to the side, to the front, to the back, depends on the direction the force is applied but it’s all — the fact that it’s driven up, you know, is a result of something either driving him down into the ground or something coming up and hitting him in the foot like a brake pedal in the car.
“So, whether it was toe first, heel first, you know, I can’t tell from just looking at the post reduction X-rays but I can tell from the way this type of fracture is that it was a vertical load type of fracture. In other words, something was driven up or he was driven down, one of the two.
“Q. But knowing for sure whether toe hit first or ball of foot hit first might affect your opinion, might it not, with regard to the involvement of the rod?
“A. I would think that if the guy fell ... off a pole and one foot landed on concrete and one foot landed on dirt, I would expect the spot that landed on concrete to have this kind of an injury. If you were to hand me two X-rays of the guy and one looked like this and one looked normal and say this guy fell out of a tree and landed on both feet evenly, which one do you think hit the concrete, I’d say this. Okay. If you were to show me a guy who fell off a telephone pole and show me an ankle that looked like this and then show me a normal ankle and say both hit equally which one do you think hit the metal bar on the ground, I’d say that. (Witness indicating.)
[[Image here]]
“There are a lot of factors involved as you tried to bring out, how he hit, what he hit, how far he fell et cetera. What it basically boils down to is this: Was the force that was applied strong enough to break the bone? Okay? Now, if he fell eighteen feet and both feet impacted on a concrete sidewalk, the chances are pretty good that the force would have been good enough to have done that to both sides. Okay?
“Now, if you just look at the modulus of elasticity — and I’ll define what I mean by that in a minute, okay — or the ability of something to give. Okay? If you take dirt, grass, something that tends to have a little bit of give to it or a steel rod that’s about, what, yea big around, something like that. Okay? The odds are that hitting with the dirt is going to dissipate it; hitting with something with fairly high amount of force applied over the same area or applied over a small area is going to do this; okay, which is [what] the rod is going to do.
“Now, if you’re asking me to say one hundred percent certain the rod is what caused it, I can’t do that. If you’re asking me to say is there a reasonable possibility, I’d have to say yes, indeed, there is.
“[And, on redirect examination:]
“Q. Dr. Meyer, you were asked in the course of Mr. Mantiply’s questions about probabilities and certainties. With all the facts that we’ve asked you to assume in how this incident took place, do you have an opinion as to whether the ground rod more likely than not played a role in causing the fracture to his—
“A. Yes, I do.
“Q. And what is that opinion?
“MR. MANTIPLY: Object to the form.
“A. My opinion is that the ground rod did play a role.”
The evidence quoted above specifically meets the objection of defendant’s counsel at the hearing bn the motion in limine, made before the trial court granted the continuance:
“That is a matter of expertise and it’s outside something that a layman can determine. You have to have medical testimony to establish the cause in respect to *110 the relationship there. Somebody that knows about anatomy and strength of bones and physics and the force of gravity and all this. A guy can’t come in and say after the fact, my left foot is broken and it has got a dent in it and that’s what caused me to have this fractured malleo-lus. If he has got medical testimony that’s another matter.”
Paraphrasing the language of Uptain, supra: it was reasonably foreseeable that, as a result of the protrusion of the ground rod above the ground in the immediate vicinity of the telephone pole, a person engaged in work on that pole would step, or even fall, on the protruding rod. The physician’s testimony establishes the causal connection between the rod and the physical injury. Thus, upon the defendant’s denial of any negligence, an issue of fact was presented. Accordingly, the judgment must be, and it hereby is, reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
MADDOX and ALMON, JJ., concur.
HOUSTON, J., concurs specially.
STEAGALL, J., concurs in the result.