This case involves post-divorce proceedings.
The parties were divorced in August 1988. In February 1989, following the husband's petition for modification and the wife's counter-petition, the trial court modified the original divorce decree, ordering the husband to comply with federal law regarding any rights of the wife to medical insurance coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. § 1161-1168 (1982 Supp. V 1987). COBRA provides, among other things, that following a divorce, a participating employer's group health insurance carrier must offer to the divorced spouse of any employee the opportunity to receive continuation coverage under the group health plan for 36 months after the divorce. See 29 U.S.C. § 1161(a),1162(2)(A)(ii), and 1163(3).
In November 1990 the wife filed a "Claim for Unpaid Expenses," which alleged that the husband had failed to discharge his obligations under the trial court's February 1989 order and that, as a result, the wife had incurred medical expenses of $4,000.
Following an ore tenus proceeding, the trial court entered an order on February 15, 1991, and an amended order on April 19, 1991, wherein it found that the husband had failed to assist the wife in obtaining medical coverage as provided for in the February 1989 order. The court rendered a money judgment in the amount of $3,315 against the husband. The husband appeals, contending that the trial court erred in awarding the wife the money judgment. We affirm.
The record reveals that the parties were married for more than 10 years and that during the marriage the wife had significant medical problems, including a detached retina, sinusitis, and endometriosis, conditions that were covered under the group insurance plan of the husband's employer, the Chamber of Commerce of Columbus, Georgia. The Chamber is a participating employer under COBRA. Following the parties' divorce, the wife remarried and obtained new medical insurance coverage; however, the new coverage excluded *Page 1360 
expenses incurred for treatment of her preexisting ailments.
The wife avers that beginning in September 1988, shortly after the divorce, she asked the husband on numerous occasions to contact the insurance coordinator for the Chamber of Commerce and to take steps necessary to enable her to receive the continuing medical coverage allowed under COBRA. The record shows that the wife also directly contacted the Chamber of Commerce and the Chamber's policy provider, Aetna Life Insurance Company, but was informed, she says, that Aetna needed to hear from the husband before proceeding to provide her With COBRA coverage. The wife testified that it was her understanding that in order for her to receive continuing coverage, it was necessary that the husband furnish her with signed documents permitting her to purchase the coverage. It is uncontroverted that the husband has never taken any action to contact the insurance company or to provide the wife with the necessary documents. Because the husband refused to assist the wife in receiving COBRA coverage, the wife pursued the matter in court.
The husband is employed as president of the Chamber of Commerce in Columbus, which at all times relevant to this action employed fewer than 20 people. The published manual of the American Chamber of Commerce Executives (ACCE), the national organization for the Columbus Chamber, provides that a divorced spouse of an employee of a chamber with 20 or more employees may continue medical insurance coverage as provided for by COBRA; typically, COBRA law does not apply to a group health plan when an employer has fewer than 20 employees.See 29 U.S.C. § 1161(b). The husband explains his inaction in the face of the wife's requests by arguing that he did not believe that the Chamber's group health insurance plan would allow continuing COBRA coverage of the wife. However, the record clearly indicates that, despite its published policy, the practice of the ACCE is in fact to allow COBRA coverage of an employee's ex-spouse, regardless of the number of people employed by a chamber.
The original divorce decree contained no provision that the husband supply or assist the wife in obtaining medical insurance coverage. However, on February 23, 1989, following the wife's counter-petition for modification, the trial court entered an order amending the divorce decree to contain the following requirement:
 "5. That the [husband] shall comply with all Federal Rules and regulations regarding [the wife's] right to medical coverage pursuant to COBRA."
It is important to note that no writ or appeal was taken from this order. As was the case prior to the modification, the husband continued to refuse to act to obtain medical insurance coverage for the wife. In February 1991 the trial court found that the husband had violated the modified order.
In his appeal from the February 1991 order, the husband argues that he did not violate the February 1989 order because, notwithstanding the Chamber of Commerce's practice regarding COBRA coverage, there is no rule or regulation in COBRA with which he failed to comply. Specifically, he contends that COBRA law did not require him to do anything, even after the court order, but instead simply requires insurance companies to offer continuing coverage to the ex-spouses of employees. He contends, moreover, that under COBRA law, an ex-spouse beneficiary must elect within 60 days of a divorce to continue coverage under the employer's group health plan. Because the trial court's February 1989 order came more than 60 days after the parties' divorce, the husband argues that the provision of the order regarding insurance coverage is "meaningless." He maintains that he could not comply with — or violate — any provision regarding COBRA since, as a practical matter, there was nothing under COBRA for him to comply with more than 60 days after the divorce.
However, we find the husband's arguments to be based on an erroneous understanding of COBRA law, as well as a willfully technical — and equally erroneous — *Page 1361 
reading of the language in the trial court's February 1989 order. The facts in the instant case show that continuing COBRA coverage of the wife was available through the husband's employer, both before and after the February 1989 court order. As has already been noted, despite having fewer than 20 employees, the Chamber of Commerce clearly allowed continuing coverage of divorced spouses of employees under COBRA. Moreover, while the husband assumes that COBRA limits the wife's election period to 60 days past the divorce, after which time her opportunity to receive coverage would be foreclosed, we find that the language in COBRA is flexible in its definition of the proper election period.
Section 1165(1) of COBRA provides that the term "election period" means the period that "is of at least sixty days'duration" and that "ends not earlier than 60 days after the later of" the date of the divorce of the employee and the beneficiary spouse or the date on which the beneficiary spouse is notified of her COBRA rights. 29 U.S.C. § 1165(1)(A), (B), and (C)(i) and (ii) (emphasis added). While no case law in this jurisdiction has heretofore addressed the issue of how to interpret the language in § 1165(1), this court is in agreement with the reasoning in a recent decision by the United States District Court for the Middle District of Georgia in Branch v.G. Bernd Co., 764 F. Supp. 1527 (M.D.Ga. 1991). In holding that the language of § 1165(1) evidences a Congressional intent to create a statutory minimum for the election period, rather than a maximum duration, the district court in Branch stated:
 "So long as the employer does not limit the election period to less than sixty (60) days, the period's duration, up to a maximum equal to the eighteen month period during which coverage may be provided, is a matter for the employer/insurer's determination."
Id. at 1536. We follow the reasoning of the Branch court in finding that because COBRA does not precisely define a statutorily set duration for the election period, employers are free to formulate election periods of greater duration.
There is no evidence in the present case indicating that the wife ever received written or oral notice that she was subject to a 60-day election period for continuation coverage under COBRA. What is more, as evidenced in a letter received by the wife from the ACCE, it is clear that the Columbus Chamber of Commerce, the husband's employer, would permit the wife's entry into the COBRA program at least as late as October 1990, well after the February 1989 order and well past the 60-day limit urged by the husband. This thoroughly undermines the husband's argument that no action to obtain coverage could be taken more than 60 days after the parties' divorce.
Because the beneficiary in the instant case (the wife) was an ex-spouse from a divorce, the maximum period during which continuation coverage could be provided for her was 36 months.See 29 U.S.C. § 1162(2)(a)(ii) and 1163(3). Because the evidence shows that the husband's employer had obviously determined to extend the election period well beyond 60 days, the election period had not expired at the time of the trial court's February 1989 order. Thus, the husband was not forestalled by federal law from taking action to ensure that the wife received COBRA coverage, and the trial court's order as it regards obtaining such coverage was not "meaningless."
It is also apparent to this court that the provision regarding medical coverage for the wife in the order of February 1989 was prompted by the husband's refusal to cooperate in obtaining such coverage for the wife and was not fashioned simply for the purpose of getting the husband to comply with federal law, whatever that law might be. Upon reviewing the transcript of the ore tenus proceeding held on February 21, 1989, we find that the trial court heard considerable testimony regarding the availability of COBRA coverage for the wife and more evidence regarding the husband's refusal to take steps necessary to obtain the coverage. The trial record contains the following colloquy among the wife's counsel, the husband, his counsel, and the court: *Page 1362 
 "[Wife's counsel]: Well, if the COBRA feature is available, let me turn it around and tell you that Federal Law says that if it is available that you better make it available to this woman over here, so, back to my question, if it is available will you execute the necessary paper work and let [the wife] pick up your coverage and start paying her premiums so she can have some insurance coverage?
 "[Husband]: If it is available and I'm required to and I have to, then, I will have to. You're asking me a question that I can't respond [to]. I'm not as up on our insurance policy as perhaps you are.
 "[Wife's counsel]: Well, I understand, but you are assuring the court and your ex-spouse here that if it is there you will cooperate and execute the necessary paper work in order to let her pick it up?
 "[Husband]: I said if I'm required to do so. Yes, sir.
 "[Wife's counsel]: Well, if you're required to do so. I take it then, if it is available and you're not ordered by this court to do so, you have no intentions to try and help her do you?
"[Husband]: She has remarried, sir.
 "[Wife's counsel]: Is that your answer, you have no intentions to let her pick it up even if it is available unless [the court] orders you to do it?
 "[Husband]: If [the court] orders me to do [it] and I'm required to do it by Federal Law, obviously I will do what I have to do.
 "[Wife's counsel]: Assume that you're required by Federal Law and it is available, unless this court orders you to do it you are not going to do it, is that what you're saying?
 "[Husband's counsel]: Judge, I object. He is arguing with the witness.
 "[Wife's counsel]: I sure am. I'm trying to get an answer.
 "[The Court]: He has answered it and I will sustain.
 "[Wife's counsel]: Would Your Honor please tell me what his answer was because I haven't picked it up yet.
 "[The Court]: He said that he would do what he was ordered to do."
The question then becomes: What did the trial court order the husband to do? It is the intent and purpose of the divorce court evidenced from the proceedings as a whole that must control. See Martin v. Terrace, 366 So.2d 275 (Ala. 1979);Coffey v. Cross, 185 Ala. 86, 64 So. 95 (1913). Upon reviewing the record of the proceedings as a whole, we find that the construction of the February 1989 order argued for by the husband ignores the obvious intent of the trial court when modifying the divorce decree. When the trial court ordered the husband to "comply with all Federal Rules and regulations regarding [the wife's] right to medical coverage pursuant to COBRA," the court clearly intended that the husband take thenecessary steps to assist in obtaining the COBRA coverage thatwas available for the wife through the group health plan of thehusband's employer.
The following finding appears in the trial court's order of February 15, 1991:
 "In cases where the agreement of the parties is ambiguous the Court must interpret the issues based upon the intent of the parties. In the instant case, the Court must clarify based upon its intent, and finds that it was intended that the [husband] assist the [wife] in obtaining medical insurance coverage under the COBRA election."
In its amended order of April 15, 1991, the trial court further finds:
 "That the undisputed testimony of the [wife] on February 21, 1989, was that beginning in September 1988, after the Judgment of Divorce entered on August 26, 1988, she repeatedly requested the assistance of the [husband] in obtaining the forms necessary to continue insurance coverage through COBRA to which the [husband] either refused or failed to respond.
 "That even after the Court ordered the [husband] to comply with COBRA based upon the above testimony, he has continued to refuse assistance to the [wife] in *Page 1363 
securing insurance pursuant to COBRA."
It is well settled that where evidence is presented ore tenus, the factfinder's conclusions and judgments are presumed to be correct and will not be set aside by this court unless they are plainly and palpably wrong or unjust. Lucero v.Lucero, 485 So.2d 347 (Ala.Civ.App. 1986). We conclude that the trial court correctly found that the husband had failed to assist the wife in obtaining medical coverage as provided for in the order of February 1989. We further determine that the trial court did not err by rendering the money judgment in the amount of $3,315 against the husband.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.